BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General
Civil Division
United States Department of Justice
DIANE KELLEHER
Assistant Branch Director
Federal Programs Branch
JEAN LIN
Special Litigation Counsel
JONATHAN D. KOSSAK
Trial Attorney
    Dep't of Justice, Federal Programs Branch
    1100 L St. NW, Washington, DC 20005
    Tel: (202) 305-0612
    Email: jonathan.kossak@usdoj.gov

Attorneys for Defendants

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
## OAKLAND DIVISION

| | |
|---|---|
| DEFENSE FOR CHILDREN INTERNATIONAL – PALESTINE; AL-HAQ; AHMED ABU ARTEMA; MOHAMMED AHMED ABU ROKBEH; MOHAMMAD HERZALLAH; A.N.; LAILA ELHADDAD; WAEIL ELBHASSI; BASIM ELKARRA; and DR. OMAR EL-NAJJAR, | No. 4:23-cv-05829-JSW |
| Plaintiffs, | **DEFENDANTS' NOTICE OF MOTION, MOTION TO DISMISS, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF AND IN OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION** |
| v. | Hearing: January 26, 2024 at 9:00 am |
| JOSEPH R. BIDEN, Jr., *President of the United States*; ANTHONY J. BLINKEN, *United States Secretary of State;* LLOYD JAMES AUSTIN III *United States Secretary of Defense*, in their official capacities, | Honorable Jeffrey S. White United States District Judge |
| Defendants. | |

# TABLE OF CONTENTS

NOTICE OF MOTION............................................................................................................1

MOTION TO DISMISS .........................................................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO
DISMISS AND IN OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION .............1

BACKGROUND ....................................................................................................................3

I.      FACTUAL BACKGROUND ....................................................................................3

II.     PLAINTIFFS' COMPLAINT AND THE PRELIMINARY INJUNCTION MOTION..........5

ARGUMENT ..........................................................................................................................6

I.      LEGAL STANDARDS ............................................................................................6

II.     THE COURT LACKS JURISDICTION OVER THIS MATTER ................................8

        A.      Plaintiffs' Claims Raise A Nonjusticiable Political Question....................................8

        B.      Plaintiffs Lack Standing Because Their Alleged Injuries Are Caused by an
                Independent Third-Party, Israel, Over Which the Court Lacks Authority...............13

III.    PLAINTIFFS' CLAIMS FAIL AS A MATTER OF LAW ..................................16

IV.     THE BALANCE OF EQUITIES TIPS AGAINST ISSUANCE OF AN INJUNCTION .....18

CONCLUSION.......................................................................................................................19

DEFS.' NOTICE OF MOTION, MOTION TO DISMISS, AND MEM. IN SUPPORT AND OPP'N TO PLS.'
MOT. FOR PRELIMINARY INJUNCTION, CASE NO. 4:23-cv-05829-JSW

i

# TABLE OF AUTHORITIES

**CASES**

*Abusharar v. Hagel*,
   77 F. Supp. 3d 1005 (C.D. Cal. 2014) .............................................................. 8, 12

*Aerotrade, Inc. v. U.S. Agency for Int'l Dev. Dep't of State*,
   387 F. Supp. 974 (D.D.C. 1974) ............................................................................ 13

*Am. Beverage Ass'n v. City & Cnty. of San Francisco*,
   916 F.3d 749 (9th Cir. 2019) ................................................................................... 7

*Am. Ins. Ass'n v. Garamendi*,
   539 U.S. 396 (2003) ............................................................................................... 10

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ............................................................................................ 7, 8

*Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris*,
   729 F.3d 937 (9th Cir. 2013) ................................................................................. 18

*Baker v. Carr*,
   369 U.S. 186 (1962) ............................................................................................ 8, 9

*Belbacha v. Bush*,
   520 F.3d 452 (D.C. Cir. 2008) .............................................................................. 18

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ................................................................................................. 7

*Bernstein v. Kerry*,
   962 F. Supp. 2d 122 (D.D.C. 2013), *aff'd*, 584 F. App'x 7 (D.C. Cir. 2014).............. 12, 14, 15

*Betteroads Asphalt Corp. v. United States*,
   106 F. Supp. 2d 262 (D.P.R. 2000) ....................................................................... 15

*Chi. & S. Air Lines, Inc. v. Waterman S.S. Corp.*,
   333 U.S. 103 (1948) ............................................................................................... 10

*Cierco v. Mnuchin*,
   857 F.3d 407 (D.C. Cir. 2017) .............................................................................. 15

*Clapper v. Amnesty Int'l USA*,
   568 U.S. 398 (2013) ............................................................................................... 14

*Coal. of Clergy, Laws., & Professors v. Bush*,
   310 F.3d 1153 (9th Cir. 2002) ............................................................................... 16

*Corrie v. Caterpillar, Inc.*,
   503 F.3d 974 (9th Cir. 2007) ........................................................................ *passim*

*Crockett v. Reagan*,
   558 F. Supp. 893 (D.D.C. 1982), *aff'd*, 720 F.2d 1355 (D.C. Cir. 1983)................................. 13

*Davis v. Pension Benefit Guar. Corp.*,
   571 F.3d 1288 (D.C. Cir. 2009) ................................................................ 18

*Demjanjuk v. Meese*,
   784 F.2d 1114 (D.C. Cir. 1986) ................................................................ 17

*Dickson v. Ford*,
   521 F.2d 234 (5th Cir. 1975) ............................................................. 8, 12

*Do Thi Tran v. U.S. Dep't of State*,
   Civ. A. No. 13-646, 2014 WL 1877414 (E.D. La. May 9, 2014) ................ 15

*Doe I v. State of Israel*,
   400 F. Supp. 2d 86 (D.D.C. 2005) ............................................................ 13

*Eagle Broadband, Inc. v. Transcon. Props., Inc.*,
   No. 2:05-CV-1525-BES-GWF, 2006 WL 8441642 (D. Nev. Apr. 4, 2006) ............ 7

*Earth Island Inst. v. Christopher*,
   6 F.3d 648 (9th Cir. 1993) ...................................................................... 10

*El-Shifa Pharm. Indus. Co. v. United States*,
   607 F.3d 836 (D.C. Cir. 2010) .................................................................. 8

*First Nat'l City Bank v. Banco Nacional de Cuba*,
   406 U.S. 759 (1972) ................................................................................ 19

*Fleck & Assocs., Inc. v. Phoenix*,
   471 F.3d 1100 (9th Cir. 2006) .................................................................. 16

*Franklin v. Massachusetts*,
   505 U.S. 788 (1992) ................................................................................ 14

*Fryshman v. U.S. Comm'n for Pres. of Am.'s Heritage Abroad*,
   422 F. Supp. 3d 1 (D.D.C. 2019) .............................................................. 15

*Garcia v. Google, Inc.*,
   786 F.3d 733 (9th Cir. 2015) .............................................................. 7, 18

*Greater Tampa Chamber of Com. v. Goldschmidt*,
   627 F.2d 258 (D.C. Cir. 1980) .................................................................. 15

*Haig v. Agee*,
   453 U.S. 280 (1981) ............................................................................ 9, 10

*Hanoch Tel-Oren v. Libyan Arab Republic*,
   517 F. Supp. 542 (D.D.C. 1981), *aff'd*, 726 F.2d 774 (D.C. Cir. 1984) ................ 17

*Harisiades v. Shaughnessy*,
   342 U.S. 580 (1952) ................................................................................ 10

*Holtzman v. Schlesinger*,
   484 F.2d 1307 (2d Cir. 1973) .................................................................. 13

DEFS.' NOTICE OF MOTION, MOTION TO DISMISS, AND MEM. IN SUPPORT AND OPP'N TO PLS.'
MOT. FOR PRELIMINARY INJUNCTION, CASE NO. 4:23-cv-05829-JSW

ii

*Hughes v. United States*,
   Civ. A. No. 2:19-cv-00037, 2020 WL 4196459 (S.D. W. Va. May 11, 2020) ........................ 18

*Indigenous People of Biafra v. Blinken*,
   639 F. Supp. 3d 79 (D.D.C. 2022) ....................................................................................... 15

*Japan Whaling Ass'n v. Am. Cetacean Soc'y*,
   478 U.S. 221 (1986) ............................................................................................................... 9

*Jensen v. Nat'l Marine Fisheries Serv. (NOAA)*,
   512 F.2d 1189 (9th Cir. 1975) ............................................................................................. 10

*Kokkonen v. Guar. Life Ins. Co. of Am.*,
   511 U.S. 375 (1994) ............................................................................................................. 14

*Lamont v. Woods*,
   948 F.2d 825 (2d Cir. 1991) ................................................................................................ 12

*Linda R.S. v. Richard D.*,
   410 U.S. 614 (1973) ............................................................................................................. 17

*Luftig v. McNamara*,
   373 F.2d 664 (D.C. Cir. 1967) ............................................................................................ 10

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992) ............................................................................................................. 14

*Mahorner v. Bush*,
   224 F. Supp. 2d 48 (D.D.C. 2002), *aff'd*, 2003 WL 349713 (D.C. Cir. Feb. 12, 2003) .......... 12

*Manybeads v. United States*,
   730 F. Supp. 1515 (D. Ariz. 1989) ..................................................................................... 18

*Marbury v. Madison*,
   5 U.S. (1 Cranch) 137 (1803) ................................................................................................ 8

*Martin v. Int'l Olympic Comm.*,
   740 F.2d 670 (9th Cir. 1984) ................................................................................................ 7

*Matar v. Dichter*,
   500 F. Supp. 2d 284 (S.D.N.Y. 2007), *aff'd*, 563 F.3d 9 (2d Cir. 2009) ................................ 8

*Mazurek v. Armstrong*,
   520 U.S. 968 (1997) ............................................................................................................... 6

*Medellin v. Texas*,
   552 U.S. 491 (2008) ............................................................................................................. 16

*Nietzche v. Freedom Home Mortg. Corp.*,
   Case No. 3:18-cv-1930, 2019 WL 5057174 (D. Or. Oct. 8, 2019),
   *aff'd*, 2023 WL 2570417 (9th Cir. Mar. 20, 2023) ............................................................... 18

DEFS.' NOTICE OF MOTION, MOTION TO DISMISS, AND MEM. IN SUPPORT AND OPP'N TO PLS.'
MOT. FOR PRELIMINARY INJUNCTION, CASE NO. 4:23-cv-05829-JSW

iii

*Nken v. Holder*,
    556 U.S. 418 (2009) ............................................................................................ 18

*Oetjen v. Cent. Leather Co.*,
    246 U.S. 297 (1918) ............................................................................................ 10

*Princz v. Fed. Republic of Germany*,
    26 F.3d 1166 (D.C. Cir. 1994) ........................................................................... 16

*Republic of Marshall Islands v. United States*,
    79 F. Supp. 3d 1068 (N.D. Cal. 2015), *aff'd*, 865 F.3d 1187 (9th Cir. 2017) ........................ 15

*Republic of Marshall Islands v. United States*,
    865 F.3d 1187 (9th Cir. 2017) ................................................................... *passim*

*Saldana v. Occidental Petroleum Corp.*,
    774 F.3d 544 (9th Cir. 2014) ................................................................................ 8

*Salmon Spawning & Recovery All. v. Gutierrez*,
    545 F.3d 1220 (9th Cir. 2008) ........................................................................... 14

*Sanchez-Espinoza v. Reagan*,
    568 F. Supp. 596 (D.D.C. 1983), *aff'd*, 770 F.2d 202 (D.C. Cir. 1985) ................................. 13

*Sarnoff v. Connally*,
    457 F.2d 809 (9th Cir. 1972) ............................................................................. 13

*Schlesinger v. Reservists Comm. to Stop the War*,
    418 U.S. 208 (1974) ............................................................................................ 13

*Schneider v. Kissinger*,
    412 F.3d 190 (D.C. Cir. 2005) ............................................................................. 9

*Serra v. Lappin*,
    600 F.3d 1191 (9th Cir. 2010) ...................................................................... 2, 16

*Sherley v. Sebelius*,
    644 F.3d 388 (D.C. Cir. 2011) ........................................................................... 18

*Sims v. Stuart*,
    291 F. 707 (S.D.N.Y. 1922) ................................................................................. 7

*Snyder v. Chi. Transit Auth.*,
    No. 22 CV 6086, 2023 WL 7298943 (N.D. Ill. Nov. 6, 2023) ......................... 17, 18

*Sosa v. Alvarez-Machain*,
    542 U.S. 692 (2004) ..................................................................................... 16, 17

*Talenti v. Clinton*,
    102 F.3d 573 (D.C. Cir. 1996) ........................................................................... 15

*Tanner Motor Livery, Ltd. v. Avis, Inc.*,
    316 F.2d 804 (9th Cir. 1963) ............................................................................... 7

DEFS.' NOTICE OF MOTION, MOTION TO DISMISS, AND MEM. IN SUPPORT AND OPP'N TO PLS.'
MOT. FOR PRELIMINARY INJUNCTION, CASE NO. 4:23-cv-05829-JSW

iv

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
   551 U.S. 308 (2007) .................................................................................. 8

*Terenkian v. Republic of Iraq*,
   694 F.3d 1122 (9th Cir. 2012) ................................................................. 8

*United States v. Aguilar*,
   883 F.2d 662 (9th Cir. 1989) ................................................................. 16

*United States v. Curtiss-Wright Exp. Corp.*,
   299 U.S. 304 (1936) ................................................................................ 10

*United States v. Munoz-Flores*,
   495 U.S. 385 (1990) ................................................................................ 19

*United States v. Texas*,
   599 U.S. 670 (2023) ................................................................................ 17

*Winter v. Nat. Res. Def. Council, Inc.*,
   555 U.S. 7 (2008) ..................................................................................... 7

*Zivotofsky v. Clinton*,
   566 U.S. 189 (2012) ............................................................................ 9, 10

**STATUTES**

18 U.S.C. §§ 1091 *et seq.* .......................................................... 1, 16, 17

18 U.S.C. § 1091 ......................................................................................... 6

18 U.S.C. § 1092 ................................................................................... 3, 17

William M. (Mac) Thornberry National Defense Authorization Act for Fiscal Year 2021,
   Pub. L. No. 116-283, § 1273, 134 Stat. 3388, 3979 .............................. 4

**RULES**

Fed. R. Civ. P. 12 ................................................................................... 2, 18

**UNITED STATES CONSTITUTION**

U.S. Const. art. II, § 2 .............................................................................. 10

**OTHER AUTHORITIES**

132 Cong. Rec. 2295 (1986) .................................................................... 17

CBS News, *Transcript: John Kirby on "Face the Nation," Dec. 3, 2023*, Face the Nation
   (Dec. 3, 2023),
   https://perma.cc/JY23-Y7TX ................................................................. 5

Convention on the Prevention and Punishment of the Crime of Genocide
   ("Genocide Convention"), Dec. 9, 1948, 78 U.N.T.S. 277 ............... 1, 6, 17

DEFS.' NOTICE OF MOTION, MOTION TO DISMISS, AND MEM. IN SUPPORT AND OPP'N TO PLS.'
MOT. FOR PRELIMINARY INJUNCTION, CASE NO. 4:23-cv-05829-JSW

v

Staff of Senate Comm. on Foreign Relations, 99th Cong., 1st Sess., *Report on Genocide Convention* (Comm. Print 1985) ........................................................................... 17

The White House, *Remarks by President Biden on the October 7th Terrorist Attacks and the Resilience of the State of Israel and Its People* (Oct. 18, 2023), https://perma.cc/D7A9-RSBU ...................................................................... 3

The White House, *Remarks by President Biden on the Release of Hostages from Gaza* (Nov. 24, 2023), https://perma.cc/UR4Z-EG8F ...................................................................... 3

The White House, *FACT SHEET: White House Calls on Congress to Advance Critical National Security Priorities* (Oct. 20, 2023), https://perma.cc/B8AJ-V4LC ...................................................................... 4

U.S. Dep't of Defense, *Readout of Secretary of Defense Lloyd J. Austin III's Call with Israeli Minister of Defense Yoav Gallant* (Oct. 31, 2023), https://perma.cc/AW85-ZGPR ...................................................................... 5

U.S. Dep't of State, *Secretary Antony J. Blinken at a Press Availability* (Nov. 30, 2023), https://perma.cc/R4T8-7ZSC ...................................................................... 5

U.S. Dep't of State, *Secretary Blinken's Meeting with Israeli Prime Minister Netanyahu* (Nov. 30, 2023), https://perma.cc/M33P-3CHF ...................................................................... 5

U.S. Dep't of Defense, *Statement from Secretary of Defense Lloyd J. Austin III on Steps to Increase Force Posture* (Oct. 21, 2023), https://perma.cc/S9VA-VMYD ...................................................................... 5

U.S. Dep't of State, *Appointment of David Satterfield as Special Envoy for Middle East Humanitarian Issues* (Oct. 15, 2023), https://perma.cc/C2LA-7YUF ...................................................................... 4

U.S. Dep't of State, *Secretary Blinken's Travel to Israel, Jordan, Qatar, Bahrain, Saudi Arabia, the United Arab Emirates, and Egypt* (Oct. 12, 2023), https://perma.cc/275U-6FSC ...................................................................... 4

U.S. Dep't of State, *Travel to Tel Aviv, Amman, Ramallah, Baghdad, Ankara, Tokyo, Seoul, and New Delhi, November 2–10, 2023*, https://perma.cc/HRV9-LHYU ...................................................................... 4

DEFS.' NOTICE OF MOTION, MOTION TO DISMISS, AND MEM. IN SUPPORT AND OPP'N TO PLS.'
MOT. FOR PRELIMINARY INJUNCTION, CASE NO. 4:23-cv-05829-JSW

vi

**NOTICE OF MOTION**

Please take notice that on January 26, 2024, at 9 a.m., Defendants Joseph R. Biden, Jr., President; Antony J. Blinken, Secretary of State; and Lloyd James Austin, III, in their official capacities, will and hereby do move the Court to dismiss this action.

**MOTION TO DISMISS**

Defendants move to dismiss this action for lack of subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure and for failure to state a claim under Rule 12(b)(6) for the reasons set forth in the following Memorandum of Points and Authorities.

\*    \*    \*

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS AND IN OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION**

Plaintiffs—Palestinian advocacy organizations based in Ramallah, Palestinian residents of the Gaza Strip, and U.S. citizens with relatives in Gaza—sued pursuant to the Convention on the Prevention and Punishment of the Crime of Genocide ("Genocide Convention"), Dec. 9, 1948, 78 U.N.T.S. 277, and its implementing criminal legislation, 18 U.S.C. §§ 1091 *et seq.*  They seek a mandatory injunction compelling the President and the Secretaries of State and Defense to take all measures within their power to prevent Israel from purportedly committing genocide against the Palestinian people in Gaza.  They also seek to enjoin any further U.S. military or financial assistance to Israel, including any diplomatic support for Israel in the international community. Plaintiffs have also moved for a preliminary injunction, seeking part of the ultimate relief requested in the Complaint—the halting of aid to Israel.

This Court should dismiss the Complaint and deny the preliminary injunction motion for three independent reasons: (1) this suit presents a quintessential nonjusticiable political question, (2) Plaintiffs cannot meet the Article III standing requirements, and (3) neither the Genocide Convention nor its implementing criminal statute creates a private right of action.

Since Hamas's October 7, 2023 terrorist attack on Israel, the President and the Secretaries of State and Defense have been working to mitigate the humanitarian crisis unfolding in Gaza, to prevent the escalation of the armed conflict between Israel and Hamas into a broader regional

DEFS.' NOTICE OF MOTION, MOTION TO DISMISS, AND MEM. IN SUPPORT AND OPP'N TO PLS.' MOT. FOR PRELIMINARY INJUNCTION, CASE NO. 4:23-cv-05829-JSW

1

conflict, and to support Israel's right to defend itself.  These diplomatic efforts helped lead to a seven-day pause in the fighting that permitted more humanitarian aid to flow into Gaza and saw the release of some hostages, including U.S. nationals.  Although the pause has ended, intense diplomatic efforts are ongoing.  Plaintiffs seek to have the Court override the Executive Branch's foreign policy and national security determinations.  But decisions about whether and how to attempt to influence foreign nations, and whether and how to provide them military assistance, financial assistance, or other support, are constitutionally committed to the political branches of the Government.  Plaintiffs' suit thus presents a nonjusticiable political question, and this Court has no subject matter jurisdiction to proceed.  *See Republic of Marshall Islands v. United States*, 865 F.3d 1187 (9th Cir. 2017); *Corrie v. Caterpillar, Inc.*, 503 F.3d 974 (9th Cir. 2007).

Even if the political-question doctrine did not preclude judicial review here (which it does), Plaintiffs still cannot overcome another jurisdictional hurdle—their lack of standing.  Plaintiffs' alleged injuries are the result of the military and other activities of an independent foreign sovereign, Israel, over which this Court has no authority.  There is no order that is within this Court's jurisdiction to fashion that could provide effective relief to Plaintiffs—namely, preventing Israel from taking the sovereign actions it chooses to take to respond to the October 7th attack.  Plaintiffs therefore cannot meet the causation or redressability prongs of the standing requirements.

Beyond these jurisdictional bars, Plaintiffs fail to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6).  Plaintiffs assert two claims under the Genocide Convention and its implementing legislation, respectively:  Count I, "Violation of the Duty to Prevent Genocide," and Count II, "Complicity in Genocide."  Plaintiffs also suffuse among those two purported causes of action references to customary international law prohibiting genocide.  However, "customary international law is not a source of judicially enforceable private rights[.]"  *Serra v. Lappin*, 600 F.3d 1191, 1197 (9th Cir. 2010).  A treaty may in some cases provide a source of judicially enforceable private rights if it is self-executing, but the Genocide Convention is not self-executing. Instead of providing for enforcement under domestic law, Article V of the Convention requires implementing legislation by the contracting parties to give effect to its provisions.  Moreover, the Genocide Convention Implementation Act, a criminal statute in Title 18 enforceable only by the

federal government, affords Plaintiffs no relief because it explicitly provides that "[n]othing in this chapter [i.e. Chapter 50A on Genocide] shall be construed as . . . creating any substantive or procedural right enforceable by law by any party in any proceeding." 18 U.S.C. § 1092. Thus, the criminal statute is likewise not a source of private rights.

Finally, although the Court need not consider the preliminary injunction factors because Plaintiffs' claims fail as a matter of law, the balance of equities weighs overwhelmingly against the issuance of a preliminary injunction. The Constitution squarely commits foreign policy and national security decisions to the political branches of the Government. Plaintiffs, however, ask the Court to override those decisions in violation of the constitutional separation of powers, which is decidedly against the Government and public interest. Plaintiffs' asserted harms are not redressable by this Court, which further warrants the denial of Plaintiffs' extraordinary request for preliminary injunctive relief, even if the Court were not inclined to dismiss their Complaint.

## BACKGROUND

### I.    FACTUAL BACKGROUND

On October 7, 2023, Israel was attacked by Hamas. Since then, Israel has been mounting a military campaign against Hamas in the Gaza Strip. The President, the Secretary of State, and numerous other senior administration officials have been engaged in diplomatic discussions with actors throughout the region regarding the conflict. The President has visited the region to reinforce the United States' support for Israel and the families of victims, including U.S. nationals killed or taken hostage, while making clear that "[t]he United States unequivocally stands for the protection of civilian life," and emphasizing that "[t]he vast majority of Palestinians are not Hamas."[1] Since his trip to Israel, the President has "been focused on accelerating the delivery of humanitarian assistance to Gaza in coordination with the United Nations and the Red Cross."[2] The President has also appointed a Special Envoy for Middle East Humanitarian Issues, who is leading

---

[1] The White House, *Remarks by President Biden on the October 7th Terrorist Attacks and the Resilience of the State of Israel and Its People* (Oct. 18, 2023), https://perma.cc/D7A9-RSBU.

[2] The White House, *Remarks by President Biden on the Release of Hostages from Gaza* (Nov. 24, 2023), https://perma.cc/UR4Z-EG8F.

diplomatic efforts in the region to address the humanitarian crisis and facilitate the provision of life-saving assistance to the most vulnerable people.[3]

In addition to U.S. commitments related to military assistance to Israel for 2019–2028 as reflected in a Memorandum of Understanding signed in 2016, Compl. ¶ 168,[4] the President has also requested supplemental funding from Congress to strengthen Israel's defense through Department of State assistance, bolster the Israel Defense Forces through Department of Defense assistance, ensure Israel's air and missile defense systems' readiness, enhance U.S. embassy security, and extend humanitarian assistance to civilians impacted by the war in Israel and Gaza.[5]

Meanwhile, the Secretary of State has traveled to Israel, Jordan, Qatar, Bahrain, Saudi Arabia, the United Arab Emirates, and Egypt to emphasize the United States' "condemnation of the terrorist attacks in Israel," "reaffirm the United States' solidarity with the government and people of Israel," and "engage regional partners on efforts to help prevent the conflict from spreading, secure the immediate and safe release of hostages, and identify mechanisms for the protection of civilians."[6]  In another trip to Israel, Jordan, Ramallah, Iraq, and Turkey in early November, the Secretary of State further "discussed urgent mechanisms to stem violence, calm rhetoric, reduce regional tensions, and reaffirm the U.S. commitment to working with partners to set the conditions necessary for a durable and sustainable peace in the Middle East, to include the establishment of a Palestinian state."[7]  And in his most recent trip towards the end of the seven-day humanitarian pause in the fighting—which the United States helped secure through close talks with Israel, Qatar, and Egypt—the Secretary met with the Israeli Prime Minister to reaffirm U.S.

---

[3] U.S. Dep't of State, *Appointment of David Satterfield as Special Envoy for Middle East Humanitarian Issues* (Oct. 15, 2023), https://perma.cc/C2LA-7YUF.

[4] In the William M. (Mac) Thornberry National Defense Authorization Act for Fiscal Year 2021, Pub. L. No. 116-283, § 1273, 134 Stat. 3388, 3979, Congress authorized "not less" than $3.3 billion in annual military aid to Israel through 2028.

[5] The White House, *FACT SHEET: White House Calls on Congress to Advance Critical National Security Priorities* (Oct. 20, 2023), https://perma.cc/B8AJ-V4LC.

[6] U.S. Dep't of State, *Secretary Blinken's Travel to Israel, Jordan, Qatar, Bahrain, Saudi Arabia, the United Arab Emirates, and Egypt* (Oct. 12, 2023), https://perma.cc/275U-6FSC.

[7] U.S. Dep't of State, *Travel to Tel Aviv, Amman, Ramallah, Baghdad, Ankara, Tokyo, Seoul, and New Delhi, November 2–10, 2023*, https://perma.cc/HRV9-LHYU.

support for Israel's right to protect itself while complying with international humanitarian law, stress the imperative of accounting for humanitarian and civilian protection needs in southern Gaza, and discuss the need to accelerate the delivery of critical, life-saving humanitarian assistance to Gaza.[8]

At the same time, the Secretary of Defense has ordered the movement of U.S. forces to the Middle East region to "bolster regional deterrence efforts, increase force protection for U.S. forces in the region, and assist in the defense of Israel,"[9] while also expressing to Israeli military leaders "the need to prioritize civilian safety in military operations . . . and urg[ing] continued progress to increase assistance to civilians in Gaza."[10]

While the humanitarian pause has ended, the United States has not "stopped [its] efforts . . . trying to work hour by hour to see if [it] can get [the humanitarian] pause reinstated[,] . . . get those hostages out," and increase the delivery of "humanitarian assistance."[11]  The United States has also reiterated its expectations that security assistance is "going to be used in keeping with [the] law of armed conflict."[12]

## II.   PLAINTIFFS' COMPLAINT AND THE PRELIMINARY INJUNCTION MOTION

On November 13, 2023, Plaintiffs filed this suit seeking to compel the President and Secretaries of Defense and State to "take all measures within their power to prevent Israel's commission of [allegedly] genocidal acts against the Palestinian people of Gaza."  Compl. at

---

[8] U.S. Dep't of State, *Secretary Blinken's Meeting with Israeli Prime Minister Netanyahu* (Nov. 30, 2023), https://perma.cc/M33P-3CHF.  *See also* U.S. Dep't of State, *Secretary Antony J. Blinken at a Press Availability* (Nov. 30, 2023), https://perma.cc/R4T8-7ZSC ("Israel has the right to do everything it can to ensure that the slaughter Hamas carried out . . . can never be repeated," but "[i]t's imperative that Israel act in accordance with international humanitarian law and the laws of war, even when confronting a terrorist group that respects neither").

[9] U.S. Dep't of Defense, *Statement from Secretary of Defense Lloyd J. Austin III on Steps to Increase Force Posture* (Oct. 21, 2023), https://perma.cc/S9VA-VMYD.

[10] U.S. Dep't of Defense, *Readout of Secretary of Defense Lloyd J. Austin III's Call with Israeli Minister of Defense Yoav Gallant* (Oct. 31, 2023), https://perma.cc/AW85-ZGPR.

[11] CBS News, *Transcript: John Kirby on "Face the Nation," Dec. 3, 2023*, Face the Nation (Dec. 3, 2023),  https://perma.cc/JY23-Y7TX.

[12] *Id.*

DEFS.' NOTICE OF MOTION, MOTION TO DISMISS, AND MEM. IN SUPPORT AND OPP'N TO PLS.' MOT. FOR PRELIMINARY INJUNCTION, CASE NO. 4:23-cv-05829-JSW

Prayer for Relief, ECF No. 1.  Count I of the Complaint alleges that Defendants violated their duty under Article I of the Genocide Convention[13] by supporting Israel's military actions against Hamas in Gaza.  *Id.* ¶¶ 313-21.  Count II alleges that Defendants, by providing diplomatic, financial, and military support to Israel, are complicit in Israel's purported commission of genocide, in violation of Article III(e) of the Genocide Convention[14] and its implementing legislation, the Genocide Convention Implementation Act, 18 U.S.C. § 1091, which makes genocide a federal crime. Compl. ¶¶ 322-40.  Plaintiffs seek an order declaring that Defendants have violated "customary international law, [purportedly] as part of federal common law," and requiring Defendants to, *inter alia*, "exert influence over Israel to end its bombing of the Palestinian people of Gaza, . . . to lift the siege on Gaza, . . . [and to] prevent the 'evacuation' or forcible transfer and expulsion of Palestinians from Gaza."  *Id.* at Prayer for Relief.  Plaintiffs also seek an order enjoining Defendants from providing further military or financial assistance to Israel and "from obstructing attempts by the international community, including at the United Nations, to implement a ceasefire in Gaza and lift the siege on Gaza."  *Id.*

On November 16, 2023, Plaintiffs filed a motion for preliminary injunction seeking to halt all U.S. "military or financial support, aid, or any form of assistance" to Israel's response to Hamas's October 7th attack.  Notice of Mot. & Mot. for Prelim. Inj.; Mem. of P. & A. in Supp. Thereof at 1, ECF No. 19 ("PI Br.").

## ARGUMENT

## I.   LEGAL STANDARDS

A preliminary injunction is "an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion."  *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (citation omitted).  To satisfy this standard, a plaintiff must establish that he or she is likely to succeed on the merits, likely to suffer irreparable harm in the

---

[13] Article I of the Convention states that "[t]he Contracting Parties confirm that genocide, whether committed in time of peace or in time of war, is a crime under international law which they undertake to prevent and to punish."  Genocide Convention, art. 1, 78 U.N.T.S. at 280.

[14] Article III of the Convention states that "[t]he following acts shall be punishable: . . . (e) Complicity in genocide."  *Id.* art. III(e), 78 U.N.T.S. at 280.

absence of preliminary relief, that the balance of equities tips in his or her favor, and that an injunction is in the public interest. *Am. Beverage Ass'n v. City & Cnty. of San Francisco*, 916 F.3d 749, 754 (9th Cir. 2019) (en banc) (citing *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)). "The first factor under *Winter* is the most important," such that the Court need not consider the remaining factors if a plaintiff fails to show a likelihood of success on the merits. *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (en banc).

Moreover, where "a party seeks mandatory preliminary relief that goes well beyond maintaining the status quo *pendente lite*, courts should be extremely cautious about issuing a preliminary injunction." *Martin v. Int'l Olympic Comm.*, 740 F.2d 670, 675 (9th Cir. 1984). For mandatory preliminary relief, a plaintiff must show that the law and facts clearly favor his or her position. *Garcia*, 786 F.3d at 740. Further, "courts have been reluctant to grant an affirmative injunction where the effect would be to grant final relief before the claims are adjudicated." *Eagle Broadband, Inc. v. Transcon. Props., Inc.*, No. 2:05-CV-1525, 2006 WL 8441642, at *2 (D. Nev. Apr. 4, 2006); *Tanner Motor Livery, Ltd. v. Avis, Inc.*, 316 F.2d 804, 808 (9th Cir. 1963) ("[I]t is not usually proper to grant the moving party the full relief to which he might be entitled if successful at the conclusion of a trial."); *Sims v. Stuart*, 291 F. 707, 707-08 (S.D.N.Y. 1922) (Learned Hand, J.) (explaining that while equity "will at times affirmatively restore the status quo ante pending the suit," it will not, "[u]nder the guise of a mandatory injunction," "take jurisdiction over a legal claim merely to hurry it along by granting final relief at the outset of the cause").

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In reviewing a motion to dismiss, the court considers "the complaint in its entirety, as well as . . . documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007).[15] The court accepts

---

[15] In considering the Government's motion to dismiss, the Court may take judicial notice of government officials' public statements. *See Saldana v. Occidental Petroleum Corp.*, 774 F.3d 544, 551 n.1 (9th Cir. 2014) (taking judicial notice of government presentations to Congress); *see*

the factual allegations as true but "bare assertions" and "conclusory" allegations are "not entitled to be assumed true." *Iqbal*, 556 U.S. at 678, 681. The court applies this standard both when analyzing whether the Complaint alleges facts sufficient to establish subject matter jurisdiction and when analyzing whether the Complaint states a valid claim for relief. *See, e.g.*, *Terenkian v. Republic of Iraq*, 694 F.3d 1122, 1131 (9th Cir. 2012).

## II. THE COURT LACKS JURISDICTION OVER THIS MATTER

### A. Plaintiffs' Claims Raise A Nonjusticiable Political Question

This Court lacks authority to decide the current dispute because "'a determination of whether foreign aid to Israel is necessary at this particular time is' . . . inappropriate for judicial resolution." *Corrie v. Caterpillar, Inc.*, 503 F.3d 974, 980 (9th Cir. 2007) (quoting *Dickson v. Ford*, 521 F.2d 234, 236 (5th Cir. 1975)); *see also Abusharar v. Hagel*, 77 F. Supp. 3d 1005, 1006 (C.D. Cal. 2014) ("[T]he decision to provide military [or financial] support to a foreign nation is a quintessential political question."). "The political question doctrine first found expression in Chief Justice Marshall's observation that '[q]uestions, in their nature political, or which are, by the constitution and laws, submitted to the executive, can never be made in this court.'" *Caterpillar*, 503 F.3d at 980 (quoting *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 170 (1803)); *see also El-Shifa Pharm. Indus. Co. v. United States*, 607 F.3d 836, 840 (D.C. Cir. 2010) (en banc) (the doctrine recognizes that "some '[q]uestions, in their nature political,' are beyond the power of the courts to resolve" (quoting *Marbury*, 5 U.S. at 170)). "The Supreme Court has since explained that '[t]he nonjusticiability of a political question is primarily a function of the separation of powers.'" *Caterpillar*, 503 F.3d at 980 (quoting *Baker v. Carr*, 369 U.S. 186, 211 (1962)). Accordingly, the doctrine "excludes from judicial review those controversies which revolve around policy choices and value determinations constitutionally committed for resolution to the halls of Congress or the confines of the Executive Branch." *Japan Whaling Ass'n v. Am. Cetacean Soc'y*, 478 U.S. 221, 230 (1986).

---

*also Matar v. Dichter*, 500 F. Supp. 2d 284, 294 n.4 (S.D.N.Y. 2007) ("For purposes of the political question inquiry, the Court may take judicial notice of the 'official policy and opinion' of the United States and Israel." (citation omitted)), *aff'd*, 563 F.3d 9 (2d Cir. 2009).

DEFS.' NOTICE OF MOTION, MOTION TO DISMISS, AND MEM. IN SUPPORT AND OPP'N TO PLS.' MOT. FOR PRELIMINARY INJUNCTION, CASE NO. 4:23-cv-05829-JSW

In *Baker v. Carr*, the Supreme Court identified six factors to determine whether a case presents a political question:

> [1] a textually demonstrable constitutional commitment of the issue to a coordinate political department; or [2] a lack of judicially discoverable and manageable standards for resolving it; or [3] the impossibility of deciding without an initial policy determination of a kind clearly for nonjudicial discretion; or [4] the impossibility of a court's undertaking independent resolution without expressing lack of the respect due coordinate branches of government; or [5] an unusual need for unquestioning adherence to a political decision already made; or [6] the potentiality of embarrassment from multifarious pronouncements by various departments on one question.

369 U.S. at 217. "[T]o find a political question, [the Court] need only conclude that one factor is present, not all." *Republic of Marshall Islands*, 865 F.3d at 1200 (quoting *Schneider v. Kissinger*, 412 F.3d 190, 194 (D.C. Cir. 2005)); *see also Zivotofsky v. Clinton*, 566 U.S. 189, 195 (2012) (discussing only the first two *Baker* factors).

Plaintiffs' requested relief plainly implicates matters that are textually committed to the political branches of the Government. Plaintiffs seek an order compelling Defendants to "take all measures within their power" to prevent Israel from committing what Plaintiffs characterize as "genocide against the Palestinian people of Gaza." Compl. at Prayer for Relief. Plaintiffs also attempt to invoke the power of this Court to require the Executive Branch to "exert influence over Israel" to end Israel's bombing in Gaza, to "lift the siege on Gaza," and to "prevent the [purported] 'evacuation' or forcible transfer and expulsion of Palestinians from Gaza." *Id.* And Plaintiffs ask for an injunction to stop Defendants from providing military or financial assistance to Israel, or the sale or delivery of weapons and arms. *Id.* These are matters "intimately related to foreign policy and national security," *Haig v. Agee*, 453 U.S. 280, 292 (1981), and thus are "largely immune from judicial inquiry or interference," *Harisiades v. Shaughnessy*, 342 U.S. 580, 589 (1952).[16]

---

[16] *See also Haig*, 453 U.S. at 292 (foreign policy and national security matters are "rarely proper subjects for judicial intervention"); *Chi. & S. Air Lines, Inc. v. Waterman S.S. Corp.*, 333 U.S. 103, 111 (1948) ("[T]he very nature of executive decisions as to foreign policy is political, not judicial. . . . They are decisions of a kind for which the Judiciary has neither aptitude, facilities nor responsibility and have long been held to belong in the domain of political power not subject to judicial intrusion or inquiry."); *Luftig v. McNamara*, 373 F.2d 664, 665-66 (D.C. Cir. 1967) ("It

"The conduct of the foreign relations of our government is committed by the Constitution to the executive and legislative—'the political'—departments of the government." *Oetjen v. Cent. Leather Co.*, 246 U.S. 297, 302 (1918); *accord Republic of Marshall Islands*, 865 F.3d at 1200-01.  It has long been recognized that "[t]he President is the sole organ of the nation in its external relations, and its sole representative with foreign nations." *United States v. Curtiss-Wright Exp. Corp.*, 299 U.S. 304, 319 (1936) (citation omitted); *see also Am. Ins. Ass'n v. Garamendi*, 539 U.S. 396, 414 (2003) ("historical gloss on the 'executive Power' vested in Article II of the Constitution has recognized the President's 'vast share of responsibility for the conduct of our foreign relations'" (citation omitted)).  "[T]he Constitution plainly grants the President the initiative in matters directly involved in the conduct of diplomatic affairs." *Earth Island Inst. v. Christopher*, 6 F.3d 648, 653 (9th Cir. 1993) (citation omitted); *see also Jensen v. Nat'l Marine Fisheries Serv. (NOAA)*, 512 F.2d 1189, 1191 (9th Cir. 1975) (similar).  When diplomacy fails, it is also the President who has the constitutionally vested authority as Commander in Chief to deploy our military.  *See* U.S. Const. art. II, § 2, cl. 1; *Chi. & S. Air Lines*, 333 U.S. at 109–10.  To address Plaintiffs' claims here, therefore, would contravene the political question doctrine, straying far beyond the "familiar judicial exercise" of how a statute should be interpreted or whether it is constitutional.  *Zivotofsky*, 566 U.S. at 196.

The Court of Appeals' decision in *Corrie v. Caterpillar, Inc.*, 503 F.3d 974 (9th Cir. 2007), is dispositive here.  There, the plaintiffs' family members were killed or injured when the Israel Defense Forces ("IDF") allegedly demolished their homes in the Palestinian Territories using bulldozers manufactured by Caterpillar, Inc., a U.S. corporation, and paid for by the United States.  *Id.* at 977-78.  The plaintiffs sued Caterpillar, raising state and federal law claims and alleging that Caterpillar knew its equipment would be used in violation of international law, and thus aided and abetted those violations.  *Id.* at 979.  The plaintiffs sought to enjoin further sales, among other relief.  *Id.*

---

is difficult to think of an area less suited for judicial action than . . . the use and disposition of military power; these matters are plainly the exclusive province of Congress and the Executive.").

1         The court found the case presented a nonjusticiable political question as resolving it would

2   require the court to "examine the United States government's role in financing the IDF's purchases

3   of . . . [the] bulldozers." *Id*. But "these sales were financed by the executive branch pursuant to a

4   congressionally enacted program calling for executive discretion as to what lies in the foreign

5   policy and national security interests of the United States." *Id*. at 982. To allow the action to

6   proceed, the court said, "would necessarily require the judicial branch of our government to

7   question the political branches' decision to grant extensive military aid to Israel." *Id*. The matter

8   thus failed the first *Baker* factor because, as the court reasoned, the judiciary "cannot intrude into

9   our government's decision to grant military assistance to Israel"—"that foreign policy decision is

10  committed under the Constitution to the legislative and executive branches." *Caterpillar*, 503 F.3d

11  at 983. The court further noted that a ruling in the plaintiffs' favor would implicate several of the

12  other *Baker* factors. For example, it would require the court to "implicitly question[], and even

13  condemn[], United States foreign policy toward Israel," and to "potential[ly] . . . caus[e]

14  international embarrassment" if the court were to "undermine foreign policy decisions in the

15  sensitive context of the Israeli-Palestinian conflict." *Caterpillar*, 503 F.3d at 983-84. Further, the

16  court was sensitive to the State Department's imperative to "choose [its] words carefully," and

17  recognized that entering "a declaration that the IDF has systematically committed grave violations

18  of international law" would "subvert United States foreign policy." *Id*. at 984. The *Caterpillar*

19  court's analysis applies with even greater force here, as that case raised only an "indirect[]"

20  challenge to the Government's foreign policy, *id*., whereas this case raises a direct one.

21        Also instructive is the Court of Appeals' decision in *Republic of Marshall Islands v. United

22  States*, a case involving the United States' alleged breach of the Treaty on the Non–Proliferation

23  of Nuclear Weapons, which "calls on each party to the Treaty 'to pursue negotiations in good faith

24  on effective measures' to end the nuclear arms race and accomplish nuclear disarmament." 865

25  F.3d at 1190 (citation omitted). In addition to finding the treaty to be non-self-executing and

26  plaintiffs' asserted injuries not redressable, the court held that the case presented a nonjusticiable

27  political question because, among other things, "the decision of when, where, whether, and how

28  the United States will negotiate with foreign nations to end the nuclear arms race and accomplish

1   nuclear disarmament" is textually committed in the Constitution to a coordinate political

2   department. *Id.* at 1200. As the court reasoned, "[w]e simply cannot square the primacy of the

3   Executive in the conduct of foreign relations and the Executive Branch's lead role in foreign

4   policy' . . . with an injunction that compels the United States to 'call[ ] for and conven[e]

5   negotiations for nuclear disarmament in all its aspects.'" *Id.* at 1201 (cleaned up). The same is

6   true of Plaintiffs' request to compel the Executive Branch to "exert influence over Israel." Compl.

7   at Prayer for Relief.

8        Not only is judicial review of Plaintiffs' claims foreclosed by *Caterpillar* and *Republic of*

9   *Marshall Islands*, but numerous other courts also have found challenges to the United States'

10  financial and diplomatic support of Israel to be nonjusticiable. *See Dickson*, 521 F.2d at 236

11  (dismissing on political question grounds a challenge to a statute appropriating funds for military

12  assistance to Israel);[17] *Abusharar*, 77 F. Supp. 3d at 1006 (dismissing on political question grounds

13  suit to enjoin the Secretaries of State and Defense from providing military support to Israel after

14  the plaintiff's home in the Gaza Strip was allegedly destroyed in a bombing by the Israeli military);

15  Memorandum Op. at 15, *John Doe I v. Israel*, No. 1:02-cv-01431 (D.D.C. Oct. 3, 2003), ECF No.

16  42 (attached as Ex. A) ("claims involving arms sales to Israel—which occur pursuant to a sensitive

17  and detailed statutory and regulatory scheme inextricably intertwined with critical foreign policy

18  decisions—are nonjusticiable political questions better left to consideration by the political

19  branches"); *Mahorner v. Bush*, 224 F. Supp. 2d 48, 53 (D.D.C. 2002) (claim seeking to enjoin the

20  President and Treasury Secretary from providing financial aid to Israel presented nonjusticiable

21  political question), *aff'd*, 2003 WL 349713 (D.C. Cir. Feb. 12, 2003); *cf. Bernstein v. Kerry*, 962

22  F. Supp. 2d 122, 126 & n.6 (D.D.C. 2013) (dismissing challenge to U.S. funding of the Palestinian

23  Authority on standing grounds and because "this case is fraught with serious political questions

24  that deprive the Court of jurisdiction"), *aff'd*, 584 F. App'x 7 (D.C. Cir. 2014).

25

26       [17] *Cf. Lamont v. Woods*, 948 F.2d 825, 833 (2d Cir. 1991) (distinguishing *Dickson* on other
     grounds, but remarking that had the plaintiffs in *Dickson* "been successful, Congress's foreign
27   policy goal—to maintain the balance of power in the Middle East and to preserve Israel's capacity
     to defend herself—could not have been achieved. Effectively, then, the challenge in *Dickson* was
28   to the foreign policy itself" (citations omitted)).

While "[i]t is hard to conceive of an issue more quintessentially political in nature than the ongoing Israeli-Palestinian conflict," *Doe I v. State of Israel*, 400 F. Supp. 2d 86, 111–12 (D.D.C. 2005), courts similarly have yielded to the political branches when addressing challenges to U.S. military or other aid in other conflicts. *See, e.g.*, *Crockett v. Reagan*, 558 F. Supp. 893, 899-900 (D.D.C. 1982) (dismissing challenge to military aid to El Salvador due to lack of standards to assess nature of U.S. involvement there), *aff'd*, 720 F.2d 1355 (D.C. Cir. 1983); *Sanchez-Espinoza v. Reagan*, 568 F. Supp. 596, 601 (D.D.C. 1983) (court lacks standards to assess U.S. actions in Nicaragua), *aff'd*, 770 F.2d 202 (D.C. Cir. 1985); *Aerotrade, Inc. v. U.S. Agency for Int'l Dev. Dep't of State*, 387 F. Supp. 974, 975-77 (D.D.C. 1974) (dismissing action challenging aid to Haiti); *Holtzman v. Schlesinger*, 484 F.2d 1307, 1311 (2d Cir. 1973) (challenge to U.S. bombing and other military activities in Cambodia presented a political question); *Sarnoff v. Connally*, 457 F.2d 809, 809-10 (9th Cir. 1972) (affirming dismissal of challenge to the Vietnam War because challenges to "foreign aid and appropriations aspects of congressional cooperation in [a military] conflict . . . presents a political question").

In sum, this case presents a political question, and "the presence of a political question deprives a court of subject matter jurisdiction." *Caterpillar*, 503 F.3d at 980; *see also Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 215 (1974) ("[T]he concept of justiciability, which expresses the jurisdictional limitations imposed upon federal courts by the 'case or controversy' requirement of Art. III, embodies . . . the political question doctrine[].").

**B.      Plaintiffs Lack Standing Because Their Alleged Injuries Are Caused by an Independent Third-Party, Israel, Over Which the Court Lacks Authority**

"Federal courts are courts of limited jurisdiction," and it is therefore "presumed that a cause lies outside this limited jurisdiction" unless a party demonstrates that jurisdiction exists. *Kokkonen v. Guar. Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).[18]  To satisfy the jurisdictional requirement

---

[18] At a minimum, the President is not a proper defendant because the Court lacks "jurisdiction of a bill to enjoin the President in the performance of his official duties," at least outside of purely ministerial duties. *Franklin v. Massachusetts*, 505 U.S. 788, 803 (1992) (citation omitted).

DEFS.' NOTICE OF MOTION, MOTION TO DISMISS, AND MEM. IN SUPPORT AND OPP'N TO PLS.' MOT. FOR PRELIMINARY INJUNCTION, CASE NO. 4:23-cv-05829-JSW

13

of standing, Plaintiffs bear the burden of establishing the following three elements: "(1) he or she has suffered an injury in fact that is concrete and particularized, and actual or imminent; (2) the injury is fairly traceable to the challenged conduct; and (3) the injury is likely to be redressed by a favorable court decision." *Salmon Spawning & Recovery All. v. Gutierrez*, 545 F.3d 1220, 1225 (9th Cir. 2008) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)). Where the elements of standing "depend[] on the unfettered choices made by independent actors not before the courts and whose exercise of broad and legitimate discretion the courts cannot presume to control or to predict," standing "is not precluded, but it is ordinarily substantially more difficult to establish." *Lujan*, 504 U.S. at 562 (citation omitted). In such circumstances "causation and redressability ordinarily hinge on the response of . . . [a] third party to the government['s] action or inaction." *Id*. Courts have been particularly "reluctant to endorse standing theories that require guesswork as to how independent decisionmakers will exercise their judgment." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 413 (2013). The burden is on the plaintiff to allege facts sufficient to show that the third party's behavior is causally linked to the government's conduct and "permit[s] redressability of injury." *Lujan*, 504 U.S. at 562. Plaintiffs have not done so here.

Israel, a sovereign nation, is an independent actor not before the Court. While the United States is providing military assistance and other support to Israel, it does not control Israel's military operations. *See, e.g.*, Compl. ¶¶ 226-27 (quoting statements of the Pentagon's Deputy Press Secretary Sabrina Singh indicating that the United States is not directing Israel's ground operations). Plaintiffs have not shown that their alleged injuries are fairly traceable to the United States' provision of military, financial, or diplomatic support to Israel. *Salmon Spawning*, 545 F.3d at 1228 (noting the lack of traceability where even if the U.S. withdrew from an international agreement, the plaintiff could still be injured by the independent acts of another country). More importantly, even if the Court were to order the United States to withdraw such support, there is no indication that such an order would change Israel's military operations in a way that would redress Plaintiffs' alleged injuries. *Cf. Bernstein*, 962 F. Supp. 2d at 130 ("The Executive Branch has decided that the provision of foreign aid [to Palestinian organizations] encourages the peace

DEFS.' NOTICE OF MOTION, MOTION TO DISMISS, AND MEM. IN SUPPORT AND OPP'N TO PLS.' MOT. FOR PRELIMINARY INJUNCTION, CASE NO. 4:23-cv-05829-JSW

14

1
2

process and . . . Plaintiffs' disagreement . . .with this policy and their belief that a change in policy would [remedy the asserted harm] . . . is, at best, mere speculation.").

3
4
5
6
7
8
9
10
11
12
13

Indeed, courts "have been particularly reluctant to find standing where the third party upon whose conduct redressability depends is a foreign sovereign." *Cierco v. Mnuchin*, 857 F.3d 407, 419 (D.C. Cir. 2017).[19]   For example, in *Republic of Marshall Islands v. United States*, 79 F. Supp. 3d 1068 (N.D. Cal. 2015) (White, J.), *aff'd*, 865 F.3d 1187 (9th Cir. 2017), in which, as discussed above, the plaintiffs sought to compel the United States' compliance with the Non-Proliferation Treaty, this Court found it could not redress the plaintiffs' alleged injury by compelling the performance of "only one nation to the Treaty"; that is, it could not fashion any meaningful decree that could "account for the participation of all of the nuclear and non-nuclear states that are parties to the Treaty but are not parties to this suit." *Id.* at 1072.   The same is true here.   Israel is an independent sovereign that is not a party before this Court.   The Court cannot fashion a remedy that could redress Plaintiffs' alleged injuries.   Accordingly, Plaintiffs lack standing to pursue their

14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

----

[19] *See, e.g.*, *Talenti v. Clinton*, 102 F.3d 573, 577-78 (D.C. Cir. 1996) (dismissing action seeking to suspend aid to Italy given the possibility that Italy might respond in a way that would not redress the plaintiff's alleged injury); *Greater Tampa Chamber of Com. v. Goldschmidt*, 627 F.2d 258, 263 (D.C. Cir. 1980) (holding that plaintiffs lack standing to challenge the validity of an international agreement between the United States and another foreign sovereign regarding air travel where no order could force the other nation to agree to terms that would redress plaintiffs' injuries); *Indigenous People of Biafra v. Blinken*, 639 F. Supp. 3d 79, 87 (D.D.C. 2022) (noting difficulty of finding redressability when the dispute involves "independent actors" who are "foreign sovereigns over whom the Court exercises no authority"); *Fryshman v. U.S. Comm'n for Pres. of Am.'s Heritage Abroad*, 422 F. Supp. 3d 1, 8 (D.D.C. 2019) ("Federal courts are simply not well-suited to draw the types of inferences regarding foreign affairs and international responses to U.S. policy that Plaintiffs' theory of causation posits." (citation omitted)); *Do Thi Tran v. U.S. Dep't of State*, Civ. A. No. 13-646, 2014 WL 1877414, at *4 (E.D. La. May 9, 2014) ("[I]t is mere speculation to assume that a court order halting aid [to Vietnam] . . . would assist in resolution of Plaintiffs' land disputes."); *Bernstein*, 962 F. Supp. 2d at 129-30 ("It is nothing more than conjecture to argue that changing U.S. funding policies [for the Palestinian people] will reduce terrorism or plaintiffs' subjective fears."); and *Betteroads Asphalt Corp. v. United States,* 106 F. Supp. 2d 262, 267 (D.P.R. 2000) ("[T]he possibility that Plaintiff would recover its debt from the Government of the Dominican Republic if the United States withheld foreign assistance is too speculative to support standing.").

DEFS.' NOTICE OF MOTION, MOTION TO DISMISS, AND MEM. IN SUPPORT AND OPP'N TO PLS.' MOT. FOR PRELIMINARY INJUNCTION, CASE NO. 4:23-cv-05829-JSW

15

claims.  *See also Republic of Marshall Islands*, 865 F.3d at 1119 (finding the plaintiffs' asserted injuries were not redressable because the cited treaty was not self-executory).[20]

## III.        PLAINTIFFS' CLAIMS FAIL AS A MATTER OF LAW

Plaintiffs assert claims under Articles I and III(e) of the Genocide Convention and the Genocide Convention Implementation Act.  18 U.S.C. §§ 1091 *et seq*., *see* Compl. ¶¶ 313-40 (Counts I & II).  And while Plaintiffs do not explicitly allege a separate cause of action for violations of "customary international law" prohibiting genocide, they appear to raise the specter of such a claim.  *See id*. ¶¶ 278-312, 313 & Prayer for Relief.

"[C]ustomary international law," however, "is not a source of judicially enforceable private rights."  *Serra v. Lappin*, 600 F.3d 1191, 1197 (9th Cir. 2010) (citing *Princz v. Fed. Republic of Germany*, 26 F.3d 1166, 1174 n.1 (D.C. Cir. 1994) and *Sosa v. Alvarez-Machain*, 542 U.S. 692, 720 (2004)).  As for the Genocide Convention, it is not a source of a privately enforceable right.  Courts have "'long recognized the distinction between treaties that automatically have effect as domestic law, and those that . . . do not by themselves function as binding federal law' enforceable in domestic courts."  *Republic of Marshall Islands*, 865 F.3d at 1192 (quoting *Medellin v. Texas*, 552 U.S. 491, 505 (2008)).  The former is referred to as a self-executing treaty.  *Serra*, 600 F.3d at 1197; *Medellin*, 552 U.S. at 505.  The latter "requires congressional action via implementing legislation or, in some cases, is addressed to the executive branch."  *Republic of Marshall Islands*, 865 F.3d at 1192.  Notably, "[i]f the treaty calls for the signatory nations to enact legislation implementing the agreement, the treaty is considered executory and no private rights are conferred by it."  *Hanoch Tel-Oren v. Libyan Arab Republic*, 517 F. Supp. 542, 547 (D.D.C. 1981)), *aff'd*, 726 F.2d 774 (D.C. Cir. 1984); *see Republic of Marshall Islands*, 865 F.3d at 1194.

---

[20] In addition, the individual plaintiffs who are not currently in the Gaza Strip—Waeil Elbhassi, Mohammad Herzallah, A.N., Laila Elhaddad, and Basim Elkarra, Compl. ¶¶ 25–29—have not alleged that they face an imminent future threat of harm to themselves.  Rather, they allege that they fear for the safety of their family in Gaza.  *Id.*  The absence of an "an allegation of personal injury" to themselves, strips these plaintiffs of both constitutional and third-party standing.  *Coal. of Clergy, Laws., & Professors v. Bush*, 310 F.3d 1153, 1163 (9th Cir. 2002); *see also Fleck & Assocs., Inc. v. Phoenix*, 471 F.3d 1100, 1105 (9th Cir. 2006) (noting that to overcome the prudential rule against asserting third-party rights, a litigant must "*already* [meet] the constitutional requirements" of "alleg[ing] a cognizable personal injury").

DEFS.' NOTICE OF MOTION, MOTION TO DISMISS, AND MEM. IN SUPPORT AND OPP'N TO PLS.' MOT. FOR PRELIMINARY INJUNCTION, CASE NO. 4:23-cv-05829-JSW

16

Here, Article V of the Convention requires the enactment of "the necessary legislation to give effect to the provisions of the [ ] Convention."  Genocide Convention, art. V, 78 U.N.T.S. at 280.  The U.S. Senate conditioned its advice and consent to the ratification of the Convention on the enactment of the "implementing legislation referred to in Article V."  132 Cong. Rec. 2295, 2350 (1986).  The Senate's statement "was intended to 'reinforce[] the fact that the Convention is not self-executing.'" *Demjanjuk v. Meese*, 784 F.2d 1114, 1117 (D.C. Cir. 1986) (quoting Staff of Senate Comm. on Foreign Relations, 99th Cong., 1st Sess., *Report on Genocide Convention* 26 (Comm. Print 1985)); *see generally Republic of Marshall Islands*, 865 F.3d at 1197 (noting the significance of the President and the Senate's intentions regarding the self-executing nature of a treaty's provisions).  Accordingly, Plaintiffs cannot assert any claim under the Convention itself.

Congress did enact the Genocide Convention Implementation Act of 1987, 18 U.S.C. §§ 1091 *et seq.*, which "attach[es] criminal penalties to the norm against genocide."  *Sosa*, 542 U.S. at 749.  But federal *criminal* law can only be enforced by the Executive Branch, *United States v. Texas*, 599 U.S. 670, 678 (2023), and private litigants lack standing to enforce it, *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973).  As to *civil* actions brought under the Act, Congress stated explicitly that "[n]othing in this chapter shall be construed as . . . creating any substantive or procedural right enforceable by law by any party in any proceeding." 18 U.S.C. § 1092.  *See also Sosa*, 542 U.S. at 748–49 (Scalia, J., concurring in part) (noting that in enacting the Genocide Convention Implementation Act, Congress and the Executive made the determination that the "norm [against genocide] should *not* give rise to a private cause of action").  Accordingly, courts have consistently held that the Act provides no private right of action.  *See, e.g.*, *Snyder v. Chi. Transit Auth.*, No. 22 CV 6086, 2023 WL 7298943, at *4 (N.D. Ill. Nov. 6, 2023); *Hughes v. United States*, Civ. A. No. 2:19-cv-00037, 2020 WL 4196459, at *4 (S.D. W. Va. May 11, 2020); *Nietzche v. Freedom Home Mortg. Corp.*, Case No. 3:18-cv-1930, 2019 WL 5057174, at *6 (D. Or. Oct. 8, 2019), *aff'd*, 2023 WL 2570417 (9th Cir. Mar. 20, 2023); and *Manybeads v. United States*, 730 F. Supp. 1515, 1521 (D. Ariz. 1989).

Because Plaintiffs' claims fail as a matter of law, the Complaint should be dismissed under Fed. R. Civ. P. 12(b)(6).  Indeed, the U.S. District Court for the Middle District of Florida recently

1  dismissed, *sua sponte* and with prejudice, a nearly identical case on the basis that the complaint in

2  that case failed to "state a valid, nonfrivolous claim for relief that is plausible on its face."

3  Endorsed Order, *Muslim Citizens of the State of Israel v. United States*, No. 8:23-cv-2697 (M.D.

4  Fla. Nov. 27, 2023), ECF No. 3 (attached as Ex. B).

5  **IV.   THE BALANCE OF EQUITIES TIPS AGAINST ISSUANCE OF AN INJUNCTION**

6          Because Plaintiffs' claims fail as a matter of law, the Court should dismiss the Complaint

7  and deny the preliminary injunction motion.  But even if the Court is not inclined to dismiss the

8  Complaint, Plaintiffs have not demonstrated a substantial likelihood of success on the merits,

9  which is a "threshold inquiry," and accordingly, the Court "need not examine the remaining three"

10  injunction factors under *Winter*. *Garcia*, 786 F.3d at 740 (quoting *Ass'n des Eleveurs de Canards*

11  *et d'Oies du Quebec v. Harris*, 729 F.3d 937, 944 (9th Cir. 2013)).  Citing a pre-*Winter*, D.C.

12  Circuit decision, Plaintiffs argue that "a motion for preliminary injunction cannot fail as a matter

13  of law if the prospective harm is sufficiently grave, even in cases in which success on the merits

14  is 'far from clear.'"  PI Br. at 7 (quoting *Belbacha v. Bush*, 520 F.3d 452, 459 (D.C. Cir. 2008)).

15  That is not the law of this circuit, nor is it a correct recitation of the law of the D.C. Circuit.  *See*

16  *Sherley v. Sebelius*, 644 F.3d 388, 393 (D.C. Cir. 2011) ("[W]e read *Winter* at least to suggest if

17  not to hold 'that a likelihood of success is an independent, free-standing requirement for a

18  preliminary injunction.'" (quoting *Davis v. Pension Benefit Guar. Corp.*, 571 F.3d 1288, 1296

19  (D.C. Cir. 2009)).

20          In any event, the balance of equities tips against issuance of a preliminary injunction here.

21  *Nken v. Holder*, 556 U.S. 418, 435 (2009) (the balance of harms and public interest factors "merge

22  when the Government is the opposing party").  The public and the Government have a strong

23  interest in maintaining the constitutional separation of powers under which the Judiciary is

24  restrained "from inappropriate interference in the business of the other branches of Government."

25  *United States v. Munoz-Flores*, 495 U.S. 385, 394 (1990).  While the loss of civilian lives on both

26  sides of the conflict is tragic, the Constitution has assigned to the political branches the

27  responsibility of determining the United States' foreign policy regarding the conflict, including

28  whether to provide military, financial or diplomatic support to Israel and under what

circumstances.  "[T]he propriety of what may be done in the exercise of this political power is not subject to judicial inquiry or decision," *First Nat'l City Bank v. Banco Nacional de Cuba*, 406 U.S. 759, 766 (1972) (citations omitted).  Accordingly, issuing the requested preliminary injunction in the circumstances here, which effectively would grant final relief to Plaintiffs, is decidedly against the public and government interest.

**CONCLUSION**

For the foregoing reasons, the Court should grant Defendants' motion to dismiss and deny Plaintiffs' motion for a preliminary injunction.

Dated: December 8, 2023

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General
Civil Division

DIANE KELLEHER
Assistant Branch Director
Federal Programs

JEAN LIN
Special Litigation Counsel

/s/ *JONATHAN D. KOSSAK*
JONATHAN D. KOSSAK
Trial Attorney (DC Bar No. 991478)
U.S. Department of Justice
Federal Programs Branch
1100 L Street, NW,
Washington, DC 20005
Tel. (202) 305-0612
Email: Jonathan.kossak@usdoj.gov

*Counsel for Defendants*

1

## <u>CERTIFICATE OF SERVICE</u>

2        I hereby certify that on the 8th day of December, 2023, I electronically transmitted the

3    foregoing document to the Clerk of the Court using the ECF system for filing.

4

5    Dated: December 8, 2023                    /s/ *Jonathan D. Kossak*

6                                            JONATHAN D. KOSSAK

7                                            Trial Attorney (DC Bar No. 991478)
                                        U.S. Department of Justice

8                                            Federal Programs Branch

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28