BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General
Civil Division
United States Department of Justice
DIANE KELLEHER
Assistant Branch Director
Federal Programs Branch
JEAN LIN
Special Litigation Counsel
JONATHAN D. KOSSAK
Trial Attorney
    Dep't of Justice, Federal Programs Branch
    1100 L St. NW, Washington, DC 20005
    Tel: (202) 305-0612
    Email: jonathan.kossak@usdoj.gov

Attorneys for Defendants

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
## OAKLAND DIVISION

|  |  |
|---|---|
| DEFENSE FOR CHILDREN INTERNATIONAL – PALESTINE; AL-HAQ; AHMED ABU ARTEMA; MOHAMMED AHMED ABU ROKBEH; MOHAMMAD HERZALLAH; A.N.; LAILA ELHADDAD; WAEIL ELBHASSI; BASIM ELKARRA; and DR. OMAR EL-NAJJAR, <br><br> Plaintiffs, <br><br> v. <br><br> JOSEPH R. BIDEN, Jr., *President of the United States*; ANTHONY J. BLINKEN, *United States Secretary of State;* LLOYD JAMES AUSTIN III *United States Secretary of Defense*, in their official capacities, <br><br> Defendants. | No. 4:23-cv-05829-JSW <br><br> **DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS** <br><br> Hearing: January 26, 2024 at 9:00 am <br><br> Honorable Jeffrey S. White <br> United States District Judge |

# TABLE OF CONTENTS

INTRODUCTION ...................................................................................................................1

ARGUMENT ........................................................................................................................2

I.     PLAINTIFFS' CLAIMS RAISE NONJUSTICIABLE POLITICAL QUESTIONS..........2

II.    PLAINTIFFS' INVOCATION OF THE ALIEN TORT STATUTE IS
UNAVAILING ............................................................................................................6

      A.     Plaintiffs' Requested Relief Is Barred by the Federal Tort Claims Act .................7

      B.     This Court Has No Authority To Recognize a Private Cause of Action
Against the United States Under the ATS ............................................................11

III.   PLAINTIFFS LACK STANDING BECAUSE THEIR ALLEGED INJURIES
ARE CAUSED BY AN INDEPENDENT THIRD PARTY ................................................15

IV.   THE BALANCE OF EQUITIES TIPS AGAINST ISSUANCE OF AN
INJUNCTION ...........................................................................................................19

CONCLUSION....................................................................................................................20

# TABLE OF AUTHORITIES

**CASES**

*Abusharar v. Hagel*,
   77 F. Supp. 3d 1005 (C.D. Cal. 2014) ................................................................ 2

*Aerotrade, Inc. v. U.S. Agency for Int'l Dev., Dep't of State*,
   387 F. Sup. 974 (D.D.C. 1974) ...................................................................... 19

*Al Otro Lado, Inc. v. Nielsen*,
   327 F. Supp. 3d 1284 (S.D. Cal. 2018) ........................................................... 10

*Al Shimari v. CACI Premier Technology, Inc.*,
   840 F.3d 147 (4th Cir. 2016) .................................................................... 5, 6

*Al-Aulaqi v. Obama*,
   727 F. Supp. 2d 1 (D.D.C. 2010) ................................................................ 10

*Alperin v. Vatican Bank*,
   410 F.3d 532 (9th Cir. 2005) ..................................................................... 15

*Al-Tamimi v. Adelson*,
   916 F.3d 1 (D.C. Cir. 2019) .................................................................. 5, 14

*Ariz. Dream Act Coal. v. Brewer*,
   757 F.3d 1053 (9th Cir. 2014) .................................................................... 20

*Baker v. Carr*,
   369 U.S. 186 (1962) ................................................................................... 4

*Bernstein v. Kerry*,
   962 F. Supp. 2d 122 (D.D.C. 2013), *aff'd*, 584 F. App'x 7 (D.C. Cir. 2014) ........................ 19

*Block v. N.D. ex rel. Bd. of Univ. & Sch. Lands*,
   461 U.S. 273 (1983) ................................................................................... 8

*Brill v. Chevron Corp.*,
   ---F. Supp. 3d---, 2017 WL 76894 (N.D. Cal. Jan. 9, 2017) .................................... 17

*Clapper v. Amnesty Int'l Inc.*,
   568 U.S. 398 (2013) .................................................................................. 16

*Corrie v. Caterpillar, Inc.*,
   403 F. Supp. 2d 1019 (W.D. Wash. 2005) ......................................................... 3

*Corrie v. Caterpillar, Inc.*,
   503 F.3d 974 (9th Cir. 2007) .............................................................. 1, 2, 3

*Delta Sav. Bank v. United States*,
    265 F.3d 1017 (9th Cir. 2001) ......................................................................... 9

*Doe I v. Cisco Sys., Inc.*,
    73 F.4th 700 (9th Cir. 2023) ......................................................................... 12

*El–Shifa Pharm. Indus. Co. v. United States*,
    607 F.3d 836 (D.C. Cir. 2010) .............................................................. 3, 4, 10

*FDIC v. Craft*,
    157 F.3d 697 (9th Cir. 1998) ..................................................................... 7, 10

*FDIC v. Meyer*,
    510 U.S. 471 (1994) ......................................................................................... 9

*Fellowship of Christian Athletes v. San Jose Unified School District Board of Education*,
    82 F.4th 664 (9th Cir. 2023) .................................................................... 19, 20

*Franklin v. Massachusetts*,
    505 U.S. 788 (1992) ......................................................................................... 7

*Fryshman v. U.S. Comm'n for Pres. of Am.'s Heritage Abroad*,
    422 F. Supp. 3d 1 (D.D.C. 2019) ................................................................... 18

*Garcia v. Google, Inc.*,
    786 F.3d 733 (9th Cir. 2015) ......................................................................... 19

*Haig v. Agee*,
    453 U.S. 280 (1981) ......................................................................................... 2

*Harisiades v. Shaughnessy*,
    342 U.S. 580 (1952) ......................................................................................... 2

*In re KBR, Inc.*,
    893 F.3d 241 (4th Cir. 2018) ........................................................................... 5

*In re Zappos.com, Inc.*,
    888 F.3d 1020 (9th Cir. 2018) ....................................................................... 16

*Indigenous People of Biafra v. Blinken*,
    639 F. Supp. 3d 79 (D.D.C. 2022) ................................................................. 19

*Jaber v. United States*,
    861 F.3d 241 (D.C. Cir. 2017) ......................................................................... 5

*Japan Whaling Ass'n v. American Cetacean Society*,
    478 U.S. 221 (1986) ....................................................................................... 18

*Jesner v. Arab Bank, PLC*,
    138 S. Ct. 1386 (2018) .................................................................................................. *passim*

*Kadic v. Karadzic*,
    70 F.3d 232 (2d Cir. 1995) ................................................................................. 14, 15

*Kentucky v. Graham*,
    473 U.S. 159 (1985) ........................................................................................................ 7

*Lane v. Pena*,
    518 U.S. 187 (1996) ........................................................................................................ 7

*Lee v. U.S. Air Force*,
    No. CV 98-1056, 1999 WL 35808305 (D.N.M. Nov. 18, 1999) ............................ 10

*Martin v. Int'l Olympic Comm.*,
    740 F.2d 670 (9th Cir. 1984) ..................................................................................... 20

*Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*,
    567 U.S. 209 (2012) .............................................................................................. 8, 9, 10

*Mendia v. Garcia*,
    768 F.3d 1009 (9th Cir. 2014) ............................................................................. 15, 16

*Michigan v. U.S. Army Corps of Eng'rs*,
    667 F.3d 765 (7th Cir. 2011) ................................................................................... 9, 10

*Mobarez v. Kerry*,
    187 F. Supp. 3d 85 (D.D.C. 2016) ............................................................................. 3

*Moon v. Takisaki*,
    501 F.2d 389 (9th Cir. 1974) ....................................................................................... 8

*Nat'l Audubon Soc'y, Inc. v. Davis*,
    307 F.3d 835 (9th Cir. 2002) ..................................................................................... 15

*Nestle USA, Inc. v. Doe I*,
    141 S. Ct. 1931 (2021) ........................................................................... 11, 12, 13, 14

*Ning Xianhua v. Oath Holdings, Inc.*,
    536 F. Supp. 3d 535 (N.D. Cal. 2021) ..................................................................... 17

*Quintero Perez v. United States*,
    8 F.4th 1095 (9th Cir. 2021) ........................................................................................ 7

*Republic of Marshall Islands v. United States*,
    865 F.3d 1187 (9th Cir. 2017) ..................................................................................... 4

*Salmon Spawning & Recovery All. v. Gutierrez*,
    545 F.3d 1220 (9th Cir. 2008) ................................................................ 17

*Sarei v. Rio Tinto, PLC*,
    671 F.3d 736 (9th Cir. 2011), *judgment vacated & remanded*, 569 U.S. 945 (2013) ........ 12, 14

*Sharp v. Weinberger*,
    798 F.2d 1521 (D.C. Cir. 1986) ................................................................ 8

*Sosa v. Alvarez-Machain*,
    542 U.S. 692 (2004) ................................................................ *passim*

*Talbert v. United States*,
    932 F.2d 1064 (4th Cir. 1991) ................................................................ 9

*Talenti v. Clinton*,
    102 F.3d 573 (D.C. Cir. 1996) ................................................................ 18

*Tobar v. United States*,
    639 F.3d 1191 (9th Cir. 2011) ................................................................ 7

*Tozzi v. U.S. Dep't of Health & Hum. Servs.*,
    271 F.3d 301 (D.C. Cir. 2001) ................................................................ 16

*United States v. Mitchell*,
    463 U.S. 206 (1983) ................................................................ 7

*United States v. Smith*,
    499 U.S. 160 (1991) ................................................................ 8

*Westbay Steel, Inc. v. United States*,
    970 F.2d 648 (9th Cir. 1992) ................................................................ 8

*Wilson v. Drake*,
    87 F.3d 1073 (9th Cir. 1996) ................................................................ 8

*Winter v. Nat. Res. Def. Council, Inc.*,
    555 U.S. 7 (2008) ................................................................ 19

*Ziglar v. Abbasi*,
    582 U.S. 120 (2017) ................................................................ 13

*Zivotofsky v. Clinton*,
    566 U.S. 189 (2012) ................................................................ 3

**STATUTES**

5 U.S.C. § 702 ................................................................ 7, 8

18 U.S.C. § 1092 ...................................................................................................... 14

28 U.S.C. § 1346 .............................................................................................. 7, 8, 9

28 U.S.C. § 1350 ........................................................................................................ 6

28 U.S.C. § 2680 ........................................................................................................ 8

**OTHER AUTHORITIES**

Emily Rose, *Netanyahu denies reports of US influence over Israeli military activity*, Reuters
    (Dec. 24, 2023), https://perma.cc/J3AQ-MYXS ...................................................... 17

H.R. Rep. No. 94-1656 (1976), *reprinted in* 1976 U.S.C.C.A.N. 6121 .................................. 9, 10

*Sovereign Immunity: Hearing Before the Subcomm. on Admin. Prac. & Proc. of the
    S. Comm. on the Judiciary*, 91st Cong. (1970) ................................................... 9, 10

S. Rep. No. 94-996 (1976) ........................................................................................ 9, 10

The White House, *Remarks by President Biden on the October 7th Terrorist Attacks and the
    Resilience of the State of Israel and its People*, Oct. 18, 2023,
    https://perma.cc/3BER-8X27 ................................................................................ 16

1

## **INTRODUCTION**

This suit raises quintessential political questions because Plaintiffs seek to have this Court superintend the Executive Branch's foreign policy and national security judgment and compel the government to prevent Israel from purportedly committing genocide in Gaza. Under *Corrie v. Caterpillar, Inc.*, 503 F.3d 974 (9th Cir. 2007), the case is nonjusticiable, and Plaintiffs' opposition brief does not refute that inescapable conclusion. But even if the Court were to proceed further, Plaintiffs' requested relief is still barred. Plaintiffs clarify that they seek to rely on the Alien Tort Statute (ATS) to redress purported violations of customary international law as incorporated into the federal common law. The ATS, of course, does not waive the United States' sovereign immunity for tortious conduct. The federal statute that does—the Federal Tort Claims Act (FTCA)—does not permit the requested injunctive or declaratory relief, nor does it provide relief when the tort claim arises under federal common law. And the FTCA is the *exclusive* remedy for tortious conduct by the United States; if relief is not available under the FTCA, it is not available at all.

Even if the Court concludes that the case is justiciable and that the FTCA does not bar the requested relief, Plaintiffs still fail to show that the Court has the authority to recognize a new cause of action against the United States under the ATS for claims of failing to prevent, and of complicity in, genocide. Under the Supreme Court's framework in *Sosa v. Alvarez-Machain*, 542 U.S. 692 (2004), the serious separation-of-powers, foreign-policy, and national-security concerns implicated by Plaintiffs' suit provide ample "sound reason[s]" for why the Court lacks such authority. *Jesner v. Arab Bank, PLC*, 138 S. Ct. 1386, 1402 (2018) (citation omitted). Finally, Plaintiffs lack standing as their alleged injuries are the result of the military and other activities of an independent foreign sovereign over which this Court has no authority.

For these reasons and those in Defendants' opening brief, the Court should grant Defendants' Motion to Dismiss, ECF No. 38, and deny Plaintiffs' Motion for Preliminary Injunction, ECF No. 19.

**ARGUMENT**

## I.    PLAINTIFFS' CLAIMS RAISE NONJUSTICIABLE POLITICAL QUESTIONS

In their opening brief, Defendants established that Plaintiffs' claims raise nonjusticiable political questions because they involve matters "intimately related to foreign policy and national security," *Haig v. Agee*, 453 U.S. 280, 292 (1981), that are "largely immune from judicial inquiry or interference," *Harisiades v. Shaughnessy*, 342 U.S. 580, 589 (1952).  Indeed, Plaintiffs seek to enjoin Defendants from providing military or financial assistance to Israel, including the sale or delivery of weapons and arms.  Compl. at Prayer for Relief.  They also seek to have the United States stop Israel from purportedly committing "genocide against the Palestinian people of Gaza"; from bombing and maintaining an alleged siege on Gaza; and from allegedly forcing the evacuation or expulsion of Palestinians from Gaza.  *Id.*  But "[t]he decision to provide military [or financial] support to a foreign nation is a quintessential political question."  *Abusharar v. Hagel*, 77 F. Supp. 3d 1005, 1006 (C.D. Cal. 2014).  In *Corrie v. Caterpillar, Inc.*, a suit against a manufacturer of equipment paid for by the United States and used by the Israeli military, the Ninth Circuit held that "'a determination of whether foreign aid to Israel is necessary at this particular time is' . . . inappropriate for judicial resolution."  503 F.3d at 983 (citation omitted).  *Caterpillar*, therefore, forecloses Plaintiffs' claims.  Indeed, numerous cases have similarly held that questions involving U.S. military, financial, and diplomatic support for Israel (and the Palestinian Authority) implicate nonjusticiable political questions.  *See* Defs.' Mot. to Dismiss & Opp'n to Pls.' Mot. for Prelim. Inj. at 12 ("Defs.' MTD").  The same is true for U.S. military and other aid in other conflicts.  *Id.* at 13.  And that is before getting into whether broader separation-of-power principles permit the Judiciary to direct the Executive Branch to undertake foreign policy or military measures to prevent or stop a foreign sovereign from engaging in military and other conduct abroad—they do not.

Plaintiffs have not shown otherwise.  Contrary to their protestations, their claims do "require the Court to second-guess *discretionary* judgments or policy *choices*" of the political branches of the government.  Pls.' Reply in Support of Mot. for Prelim. Inj. & Opp'n to MTD at 11, ECF No. 44 ("Pls.' Opp'n").  As in *Caterpillar*, "[a]llowing this action to proceed would

necessarily require the judicial branch of our government to question the political branches' decision to grant extensive military aid to Israel." 503 F.3d at 982; *see also Mobarez v. Kerry*, 187 F. Supp. 3d 85, 92 (D.D.C. 2016) (Ketanji Brown Jackson, J.) ("if the court is being called upon to serve as 'a forum for reconsidering the wisdom of discretionary decisions made by the political branches in the realm of foreign policy or national security[,]' then the political-question doctrine is implicated, and the court cannot proceed" (quoting *El–Shifa Pharm. Indus. Co. v. United States*, 607 F.3d 836, 842 (D.C. Cir. 2010)) (en banc)).

Plaintiffs attempt to distinguish *Caterpillar* on the ground that it involved a "discretionary decision to provide Israel with military aid" pursuant to a statute and did not assert "any violation of a firm legal duty against the United States." Pls.' Opp'n at 14. While the United States was not a defendant in *Caterpillar*, the plaintiffs in that case did allege a range of claims from alleged war crimes in violation of the Fourth Geneva Convention, to alleged extrajudicial killings actionable under the Torture Victims Prevention Act, and to allegations of "aiding and abetting, conspiring in, or ratifying cruel, inhuman, or degrading treatment or punishment in violation of the law of nation," among other federal and state laws. *Corrie v. Caterpillar, Inc.*, 403 F. Supp. 2d 1019, 1023 (W.D. Wash. 2005). If Plaintiffs were correct that claims of violations of legal duties are sufficient to preclude the application of the political-question doctrine even where the case meets the *Baker* factors, then the *Caterpillar* court would not have dismissed the case on political question grounds but would have determined whether the defendant violated those "legal duties." It makes no sense that a case against a private party that indirectly intruded into matters constitutionally assigned to the Executive Branch is precluded by the political-question doctrine, but a case filed against the United States itself would not be.

*Zivotofsky v. Clinton*, 566 U.S. 189 (2012), upon which Plaintiffs rely, is inapposite. There, in an attempt to "override" the State Department's policy of listing "Jerusalem," as opposed to "Israel," as the place of birth on the passport for a U.S. citizen born in Jerusalem, *id.* at 192, Congress passed a law requiring "Israel" be listed, *id.* at 191. The Supreme Court held that the political-question doctrine was not implicated because the "federal courts are not being asked to supplant a foreign policy decision of the political branches with the courts' own unmoored

determination of what United States policy towards Jerusalem should be." *Id*. at 196; *id.* at 195 (noting the courts were not being asked "to determine whether Jerusalem is the capital of Israel"). Instead, the Court explained, the case raised the constitutional question of whether the statute trenched on the President's constitutional power to recognize foreign sovereigns. *Id.* "No policy underlying the political question doctrine suggests that Congress or the Executive . . . can decide the constitutionality of a statute; that is a decision for the courts." *Id.* at 196–97 (citation omitted).

Here, rather than asking the Court to engage in the "familiar judicial exercise" of determining whether a statute is constitutional or how to interpret it, *id.* at 196, Plaintiffs ask the Court to intrude into areas constitutionally committed to the political branches—U.S. foreign policy decisions about the conflict in Gaza. While Plaintiffs assert that those decisions violate customary international law, "[t]he political question doctrine bars [the court's] review of claims that, *regardless of how they are styled*, call into question the prudence of the political branches in matters of foreign policy or national security constitutionally committed to their discretion." *El-Shifa Pharm*, 607 F.3d at 842 (emphasis added). "A plaintiff may not, for instance, clear the political question bar simply by '''recasting [such] foreign policy and national security questions in tort terms.'" *Id.* at 842–43 (citation omitted). That is what Plaintiffs seek to do here.

Plaintiffs further argue that the political-question doctrine does not bar judicial review here because there are judicially manageable standards governing obligations to prevent the crime of genocide. Pls.' Opp'n at 16-18. This relates to the second *Baker* factor, which asks whether a case presents "a lack of judicially discoverable and manageable standards for resolving it." *Baker v. Carr*, 369 U.S. 186, 217 (1962). It is far from clear that there are judicially manageable standards for resolving Plaintiffs' claims, particularly in light of Plaintiffs' requested relief—a mandatory injunction compelling the President and the Secretaries of State and Defense to take all measures within their power to influence another country. However, Defendants need not rely on that factor—the existence of only one of the six *Baker* factors suffices to preclude judicial review. *Id.*; *see also Republic of Marshall Islands v. United States*, 865 F.3d 1187, 1200 (9th Cir. 2017) (same). *Caterpillar*, for example, did not analyze the second factor.

Plaintiffs cite *Al-Tamimi v. Adelson*, 916 F.3d 1 (D.C. Cir. 2019) and *Al Shimari v. CACI Premier Technology, Inc.*, 840 F.3d 147 (4th Cir. 2016), for the proposition that the political question doctrine does not bar claims of genocide, torture, or war crimes.  Pls.' Opp'n at 12.  Neither case helps Plaintiffs.  *Al-Tamimi* held that it could resolve claims that Israeli settlers and other defendants were committing genocide against Palestinians in certain disputed territory without touching upon a nonjusticiable political question.  916 F.3d at 13.[1]  Critically, the court determined that answering the question would not have created any inter-branch conflict because no U.S. foreign policy was at issue.  The Executive Branch initially had expressed concern that addressing claims of genocide against the *Israeli military* could create such a conflict because "a judicial finding that the Israeli armed forces had committed the alleged offenses would implicitly condemn American foreign policy by suggesting that the [government's] support of Israel is wrongful."  *Id.* (citation omitted).  Although the court recognized that the Executive Branch's opinion on the "foreign policy ramifications of the court's resolution of a potential political question" was "owed deference," it deemed the issue moot when the plaintiffs waived any liability claim against the Israeli military.  *Id*.  Here, of course, U.S. foreign policy and Israeli military conduct are at the heart of this litigation.

*Al Shimari v. CACI Premier Technology* is likewise inapposite.  There, Iraqi nationals claimed that they were tortured by a military contractor while in U.S. custody in the Abu Ghraib prison in Iraq.  The Fourth Circuit held that the contractor's actions could be shielded from judicial review by the political question doctrine only "if they were not unlawful when committed and occurred under the actual control of the military or involved sensitive military judgments."  *Al Shimari*, 840 F.3d at 151.[2]  As the Fourth Circuit later explained, where the military's control of the contractors is "plenary and actual," rendering the contractors' decisions "de facto military

---

[1] Only one of the defendants was a U.S. official and when the United States was substituted for him, the claims against the United States were dismissed on sovereign immunity grounds.  *Al-Tamimi*, 916 F.3d at 6 n.3.

[2] *But see Jaber v. United States*, 861 F.3d 241, 247 n.1 (D.C. Cir. 2017) (criticizing *Al Shimari* "[as] put[ting] the cart before the horse, requiring the district court to first decide the merits of a claim and, only thereafter, determin[ing] whether that claim was justiciable").

decisions," the political question doctrine bars judicial review.  *In re KBR, Inc.*, 893 F.3d 241, 264 (4th Cir. 2018) (citation omitted).  Here, of course, there is no issue of whether this case implicates sensitive foreign policy decisions of the political branches—Plaintiffs are directly challenging those decisions as violating international law, so *Al Shimari* does not help them.

Finally, Plaintiffs note that the Supreme Court has only three times "identified a case presenting a wholly non-justiciable political question."  Pls.' Opp'n at 12.  But Plaintiffs ignore the numerous lower court cases finding that political questions bar judicial review in strikingly similar circumstances.  Defs.' MTD at 12–13.  They also fail to identify a single case in which a court has enjoined the Executive from providing military or diplomatic support for another country in the middle of an ongoing conflict that is the subject of sensitive diplomatic discussions at the highest levels of the government here and abroad.  Such a ruling would be unprecedented.  Accordingly, this case should be dismissed as nonjusticiable.

## II.   PLAINTIFFS' INVOCATION OF THE ALIEN TORT STATUTE IS UNAVAILING

Although Plaintiffs invoke specific provisions of the Convention on the Prevention and Punishment of the Crime of Genocide ("Genocide Convention") and its implementing criminal statute, the Genocide Convention Implementation Act ("Implementation Act"), for their two causes of action, Compl. ¶¶ 313–21 ("Claim I"), ¶¶ 322–40 ("Claim II"), and in support of their motion for preliminary injunction, *see* Pls.' Mot. for Prelim. Inj. at 12–25, Plaintiffs clarified that they do not directly seek to enforce the Convention or assert a cause of action under the Implementation Act.  Pls.' Opp'n at 6-7.  That is not surprising because as Defendants demonstrated in their opening brief, the Convention is not self-executing and affords no private right of action, and the Implementation Act is a criminal statute that also provides no private right of action.  Defs.' MTD at 16–18.  Accordingly, the Court should dismiss both "claims."

Plaintiffs instead assert for the first time in their opposition brief that they seek to rely on the Alien Tort Statute ("ATS") for alleged violations of customary international law as incorporated by federal common law.  *Compare* Pls.' Opp'n at 6–11 (discussing the ATS and *Sosa v. Alvarez-Machain*, 542 U.S. 692 (2004)), *with* Pls.' Mot. for Preliminary Inj. (referencing neither).  But the ATS does not do the work Plaintiffs wish.  It provides that "[t]he district courts

shall have original jurisdiction of any civil action by an alien for a tort only, committed in violation of the law of nations or a treaty of the United States." 28 U.S.C. § 1350.  Five of the plaintiffs are not aliens and, therefore, the ATS does not provide jurisdiction for their claims.  *See* Compl. ¶¶ 25–29.  The ATS also is of no help to the alien Plaintiffs because relief is foreclosed by the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346(b)(1), and because serious separation-of-powers and foreign-policy concerns preclude this Court from creating a new cause of action against the United States for purported international law violations under the Supreme Court's framework in *Sosa v. Alvarez-Machain*, 542 U.S. 692 (2004).

### A.  Plaintiffs' Requested Relief Is Barred by the Federal Tort Claims Act

Because Plaintiffs bring this suit against the President[3] and the Secretaries of Defense and State, Comp. ¶¶ 30–32, it is a suit against the United States itself, *see Kentucky v. Graham*, 473 U.S. 159, 165–67 (1985).  "It is axiomatic that the United States may not be sued without its consent and that the existence of [such] consent is a prerequisite for jurisdiction."  *United States v. Mitchell*, 463 U.S. 206, 212 (1983).  And all purported waivers of sovereign immunity must be "strictly construed . . . in favor of the sovereign."  *Lane v. Pena*, 518 U.S. 187, 192 (1996).  Here, the ATS does not waive the United States' sovereign immunity.  *Quintero Perez v. United States*, 8 F.4th 1095, 1100–01 (9th Cir. 2021).  A party asserting jurisdiction under the ATS against the United States "must establish, independent of that statute, that the United States has consented to suit."  *Id.* at 1101 (quoting *Tobar v. United States*, 639 F.3d 1191, 1196 (9th Cir. 2011)).  Plaintiffs make no attempt to do so in their Complaint or motion for preliminary injunction.  Although the Administrative Procedure Act ("APA") generally waives the United States' sovereign immunity for suits seeking injunctive relief, 5 U.S.C. § 702, that waiver does not apply "if any other statute that grants consent to suit expressly or impliedly forbids the relief" sought by the plaintiff.  *Id.* § 702(2).  The FTCA is such a statute.

---

[3] Even aside from the FTCA, the Court has "no jurisdiction of a bill to enjoin the President in the performance of his official duties," at least outside of purely ministerial duties. *Franklin v. Massachusetts*, 505 U.S. 788, 803 (1992) (citation omitted).

"The FTCA is the *exclusive* remedy for tortious conduct by the United States," and its "waiver of sovereign immunity is strictly construed in favor of the sovereign." *FDIC v. Craft*, 157 F.3d 697, 706 (9th Cir. 1998) (emphasis added). The FTCA permits tort claims against the United States, with several exceptions, such as when the claim is based on the exercise of a discretionary function. *See* 28 U.S.C. § 2680(a). It also contains certain limitations, such as permitting only money damages for torts arising under state law. 28 U.S.C. § 1346(b)(1). That is, Congress has "dealt in particularity with" tort claims against the United States and "'intended a specified remedy'—including its exceptions—to be exclusive." *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209, 216 (2012) (quoting *Block v. N.D. ex rel. Bd. of Univ. & Sch. Lands*, 461 U.S. 273, 286 n.22 (1983)); *id.* at 215 (noting that the APA's carve-out in 5 U.S.C. § 702(2) "prevents plaintiffs from exploiting the APA's waiver to evade *limitations* on suit contained in other statutes" (emphasis added)).[4] Because it provides the exclusive remedy for tortious conduct by the United States, the FTCA precludes government liability under other avenues even when the FTCA itself does not in fact provide a remedy. As the Ninth Circuit has noted, "Congress recognized that the required substitution of the United States as the defendant in tort suits filed against Government employees would sometimes foreclose a tort plaintiff's recovery altogether." *Wilson v. Drake*, 87 F.3d 1073, 1078 (9th Cir. 1996) (citation omitted); *see, e.g.*, *United States v. Smith*, 499 U.S. 160, 166 (1991) (concluding that the FTCA barred liability for tortious conduct by a federal employee, even though the FTCA did not provide a remedy, because the alleged tortious conduct fell within one of the FTCA exceptions).

Here, Plaintiffs seek to hold government officials liable in tort under the ATS. Accordingly, the FTCA is Plaintiffs' exclusive remedy. Two FTCA limitations, however, preclude Plaintiffs' requested injunctive and declaratory relief. First, the FTCA permits only

---

[4] Although *Patchak* involved the Quiet Title Act, the decision applies equally to the FTCA because Congress intended both statutes to be comprehensive and exclusive. *See Block*, 461 U.S. at 285–86 (Quiet Title Act is exclusive); *see also Sharp v. Weinberger*, 798 F.2d 1521, 1523–24 (D.C. Cir. 1986) (finding that the APA's waiver of sovereign immunity "does not run to actions" seeking equitable relief in contract cases because money damages under the Tucker and Little Tucker Acts is the sole remedy for breaches of contract by the government, and those Acts "impliedly forbid . . . [equitable] relief").

DEFS.' REPLY IN SUPPORT OF MOTION TO DISMISS, CASE NO. 4:23-cv-05829-JSW

money damages, not injunctive or declaratory relief.  28 U.S.C. § 1346(b)(1); *Moon v. Takisaki*, 501 F.2d 389, 390 (9th Cir. 1974); *see, e.g.*, *Westbay Steel, Inc. v. United States*, 970 F.2d 648, 651 (9th Cir. 1992) ("[T]he only relief provided for in the [FTCA] is 'money damages,'" and thus, "there is no jurisdiction under the FTCA to award an equitable lien" (quoting *Talbert v. United States*, 932 F.2d 1064, 1065–66 (4th Cir. 1991)).

Second, the FTCA permits relief only if the tort claim arises under state law, not federal common law—or in this instance, customary international law as incorporated by federal common law.  The FTCA waives sovereign immunity only "where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."  28 U.S.C. § 1346(b)(1).  As the Supreme Court has explained, the "reference to the 'law of the place' means law of the State—the source of substantive liability under the FTCA." *FDIC v. Meyer*, 510 U.S. 471, 478 (1994).  Thus, when "federal law, not state law, provides the source of liability," the United States "simply has not rendered itself liable."  *Id.; see also Delta Sav. Bank v. United States*, 265 F.3d 1017, 1024 (9th Cir. 2001) ("liability . . . aris[ing] from federal law, not state law[,] . . . cannot sustain a cause of action under the FTCA").  For both these reasons, the FTCA bars the Plaintiffs' requested relief, and "the APA does not undo the judgment" Congress exercised in enacting the FTCA.  *Patchak*, 567 U.S. at 216.[5]

Section 702's legislative history further confirms that the APA does not provide the requisite waiver of sovereign immunity for Plaintiffs' claims to enjoin purported tortious conduct by the United States.  In amending the APA to add § 702's waiver of sovereign immunity, Congress adopted a proposal advanced by the Administrative Conference of the United States, which explained that its "recommendation [was] phrased as not to effect an implied repeal or amendment of any prohibition, limitation, or restriction of review contained in existing statutes, such as . . . the Federal Tort Claims Act . . . in which Congress has conditionally consented to

---

[5] *But see Michigan v. U.S. Army Corps of Eng'rs*, 667 F.3d 765, 774–76 (7th Cir. 2011) (a pre-*Patchak* case holding that APA waives immunity for a public nuisance claim for equitable relief based on federal common law, reasoning that the FTCA's express authorization of specific tort claims against the United States for money damages did not indicate "that Congress meant to forbid all actions that were not expressly authorized").

suit." *Sovereign Immunity: Hearing Before the Subcomm. on Admin. Prac. & Proc. of the S. Comm. on the Judiciary*, 91st Cong. 138–39 (1970); H.R. Rep. No. 94-1656, 23–25 (1976), *reprinted in* 1976 U.S.C.C.A.N. 6121, 1642–44; S. Rep. No. 94-996, 22–24 (1976).  As originally introduced in the Senate, the legislation would have withheld authority to grant relief only if another statute "forbids the relief which is sought," rather than if it "expressly or impliedly" does so, as proposed by the Administrative Conference.  S. Rep. No. 94-996 at 12, 26; H.R. Rep. No. 94-1656, at 13, 27; *see* S. 3568, 91st Cong. (1970).  The Department of Justice urged Congress to restore "expressly or impliedly," S. Rep. No. 94-996, at 26–27; H.R. Rep. No. 94-1656, at 27–28, because "existing statutes have been enacted against the backdrop of sovereign immunity," and so "in most if not all cases where statutory remedies already exist, these remedies will be exclusive," H.R. Rep. No. 94-1656, at 28; S. Rep. No. 94-996, at 27.  Congress heeded this request.  S. Rep. No. 94-996, at 12; H.R. Rep. No. 94-1656, at 13.  Both the House and Senate committees then explained that "the partial abolition of sovereign immunity brought about by this bill does not change existing limitations on specific relief, if any, derived from statutes dealing with such matters as . . . tort claims." H.R. Rep. No. 94-1656, at 13; S. Rep. No. 94-996, at 12.  Accordingly, the APA is not an "end-run [around] the [FTCA's] limitations," *Patchak*, 567 U.S. at 216, and the FTCA precludes Plaintiffs' tort claims for injunctive relief.[6]  *Lee v. U.S. Air Force*, No. CV 98-

---

[6] In addition to *Michigan*, 667 F.3d at 774–76, discussed in *supra* n.5, one out-of-circuit district court has also determined that the FTCA does not impliedly preclude the APA's waiver of sovereign immunity, but did so after noting that "Defendants point to no legislative history indicating that the FTCA was intended to provide the exclusive remedy for tort claims against the United States." *Al-Aulaqi v. Obama*, 727 F. Supp. 2d 1, 41 n.11 (D.D.C. 2010).  Defendants have done so here, and as noted, the Ninth Circuit has also held as much, *see Craft*, 157 F.3d at 706.  In any event, the *Al-Aulaqi* court was skeptical of the plaintiff's argument that his ATS claim of extrajudicial killing could proceed against the United States under the APA's waiver of sovereign immunity for injunctive relief.  727 F. Supp. 2d at 41.  The court ultimately declined to exercise its equitable discretion to grant the requested injunctive relief because "it would be extraordinary" to order such relief "against the President's top military and intelligence advisors," in the absence of a clear waiver of sovereign immunity permitting suit under the ATS against the United States or its officials.  *Id.* at 43 (citing *El–Shifa*, 607 F.3d at 858 (Kavanaugh, J., concurring)); *see also Al Otro Lado, Inc. v. Nielsen*, 327 F. Supp. 3d 1284, 1307 (S.D. Cal. 2018) (finding that the APA waived sovereign immunity in ATS suit without discussing the FTCA but observing that "[t]he notion that the APA's waiver of sovereign immunity should not apply to permit equitable relief in military matters or sensitive foreign affairs cases has been echoed by other courts" (citing *Al-Aulaqi*, 727 F. Supp. 2d at 41–43)).

1056, 1999 WL 35808305, at *7 (D.N.M. Nov. 18, 1999) (explaining that "Plaintiffs' tort claims [could not] be brought under the APA" because "the FTCA provides exclusive relief for tort claims against the Government and its agencies," and also recognizing that the FTCA "implicitly forbids the [injunctive] relief sought by Plaintiffs").

## B.   This Court Has No Authority To Recognize a Private Cause of Action Against the United States Under the ATS

Even if there were a waiver of sovereign immunity for Plaintiffs' claims against the United States, and the requested relief was not barred by the FTCA, the Court has no authority to create a new private right of action against the United States under the ATS under the framework set forth by the Supreme Court.  In *Sosa v. Alvarez-Machain*, the Supreme Court explained that the ATS is a jurisdictional statute and does not provide any private cause of action, but that under the ATS, federal courts may exercise common-law authority to create private rights of action "for [a] modest number of international law violations."  542 U.S. at 724.  This is so because the First Congress, which enacted the ATS, understood that common law derived from the law of nations would provide causes of action for certain torts: "violation of safe conducts, infringement of the rights of ambassadors, and piracy."  *Id.*  The Court stressed, however, that the authority to "adapt the law of nations to private rights" was narrow and should be exercised with "great caution."  *Id.* at 728; *Nestle USA, Inc. v. Doe I*, 141 S. Ct. 1931, 1937 (2021) ("Tellingly, we have never created a cause of action under the ATS.").

To ensure that courts subject purported ATS claims to "vigilant doorkeeping," 542 U.S. at 729, *Sosa* set forth a two-step test for a court to recognize a cause of action under the ATS.  A plaintiff has the burden to plausibly allege at the motion to dismiss stage that: (1) the alleged violation is of "a norm that is specific, universal, and obligatory" under international law, *id.* at 732 (citation omitted); and (2) it is a proper exercise of "judicial discretion" to create a cause of action rather than defer to Congress, *id.*, at 726, 736 & n.27; *Nestle*, 141 S. Ct. at 1938–39 (discussing *Sosa*'s two-step test).  Under the second step, a court must consider, among other things, a nonexclusive list of factors such as (i) the general assumption that the creation of private rights of action is "better left to legislative judgment," including the decision whether "to permit

enforcement without the check imposed by prosecutorial discretion"; (ii) "the potential implications for the foreign relations of the United States"; (iii) concerns about "impinging on the discretion of the Legislative and Executive Branches in managing foreign affairs"; and (iv) the absence of a congressional mandate. *Sosa*, 542 U.S. at 725–28; *see, e.g.*, *Jesner v. Arab Bank, PLC*, 138 S. Ct. 1386, 1407 (2018) (applying *Sosa* to hold that "foreign corporations may not be defendants in suits brought under the ATS").

Applying the two-step test here, Defendants recognize that in *Sarei v. Rio Tinto, PLC*, 671 F.3d 736 (9th Cir. 2011) (en banc), *judgment vacated & remanded*, 569 U.S. 945 (2013), the Ninth Circuit said that violations of the prohibition against genocide "fall within the limited category of claims constituting a violation of internationally accepted norms for ATS jurisdiction." *Id.* at 758– 59. However, in this case, Plaintiffs allege in Count I of their Complaint that Defendants have violated customary international law obligations to *prevent* third parties from committing genocide. But Plaintiffs do not identify any case holding that these affirmative obligations satisfy the first step of the *Sosa* test or that they may substantiate a cause of action under the ATS. Plaintiffs allege in Count II of their Complaint that Defendants are complicit in genocide. Though the Supreme Court has noted but not decided the issue, *see Nestle*, 141 S. Ct. at 1936, the Ninth Circuit has held an ATS plaintiff could assert a claim for aiding-and-abetting.[7] *Doe I v. Cisco Sys., Inc.*, 73 F.4th 700 (9th Cir. 2023). Given that precedent, Defendants do not argue that Plaintiffs' complicity-in-genocide allegations fall outside a recognized international norm cognizable under the ATS. Nevertheless, the Court still has no authority to recognize a new cause of action against the United States under the ATS for either of Plaintiffs' claims because the second step of *Sosa* is not satisfied here.

Plaintiffs make no effort in their Complaint, their preliminary injunction motion, or their opposition to the motion to dismiss to carry their burden to show that the second step of the *Sosa* test is satisfied. In fact, they cannot. Defendants are aware of no U.S. court that has ever

---

[7] Defendants assume for present purposes, without conceding, that in the context of the crime of genocide, "complicity in genocide," as defined in the Genocide Convention, is coextensive with "aiding and abetting" liability under general international law.

DEFS.' REPLY IN SUPPORT OF MOTION TO DISMISS, CASE NO. 4:23-cv-05829-JSW

recognized a cause of action under the ATS against the United States. Since *Sosa*, the Supreme Court has noted that *Sosa*'s second step "is consistent with [the] Court's general reluctance to extend judicially created private rights of action." *Jesner*, 138 S. Ct. at 1402. "[E]ven in the realm of domestic law," the Court observed, "recent precedents cast doubt on the authority of courts to extend or create private causes of action." *Id.* As the Court said, such judgments are generally best left to the legislature, which is "better position[ed] to consider if the public interest would be served by imposing" legal liability in a particular type of case. *Id.* (quoting *Ziglar v. Abbasi*, 582 U.S. 120, 136 (2017)). These background "separation-of-powers concerns," the Court further explained, "apply with particular force in the context of the ATS," because "the ATS implicates foreign relations," and "[t]he political branches, not the Judiciary, have the responsibility and institutional capacity to weigh foreign-policy concerns." *Id.* at 1403. In fact, "[i]n light of the foreign-policy and separation-of-powers concerns inherent in ATS litigation," the Court noted, "there is an argument that a proper application of *Sosa* would preclude courts from ever recognizing any new causes of action under the ATS." *Id.* At a minimum, "if there are sound reasons to think Congress might doubt the efficacy or necessity" of a new remedy, "courts must refrain from creating the remedy in order to respect the role of Congress." *Id.* at 1402 (quoting *Abbasi*, 582 U.S. at 137); *see also Nestle*, 141 S. Ct. at 1938–40 (the Judiciary's lack of "institutional capacity to consider all factors relevant to creating a cause of action that will inherently affect foreign policy" is a "sound reason" not to create a cause of action (plurality op.) (cleaned up)). In this way, *Sosa*'s second step is similar to the political question doctrine analysis.

And just as the political question doctrine bars Plaintiffs' claims here, serious separation-of-powers, foreign policy, and national security concerns preclude the creation of a new private cause of action under the ATS against the United States. Plaintiffs seek to restrain the political branches' exercise of foreign policy judgments. This suit is at cross-purposes with the Executive Branch's need for flexibility in calibrating diplomatic measures to accomplish foreign-policy objectives. Moreover, adjudicating Plaintiffs' ATS claim would necessarily entail a determination about whether Israel has transgressed limits imposed by international law, triggering precisely the type of negative foreign policy consequences the Supreme Court said should preclude recognition

of a private right of action.  *See Sosa*, 542 U.S. at 727–28 (noting that if a court were to hold that a foreign government or its agent has transgressed those limits, that would have "potential implications for the foreign relations of the United States" and risk "adverse foreign policy consequences").  These are more than enough "sound reasons" to preclude a new cause of action against the United States for Plaintiffs' ATS claims.  *Jesner*, 138 S. Ct. at 1402.

*Sarei v. Rio Tinto, PLC*, 671 F.3d 736 (9th Cir. 2011) (en banc), cited by Plaintiffs in support of their ATS claim, highlights why this case fails the second *Sosa* test.  In refusing to find a political question, the *Sarei* court concluded that the case "in no way call[ed] upon the courts to judge the conduct of foreign relations by the United States government."  *Id.* at 756; *id.* ("the facts of this case [involving the activities of a private mining corporation] present no question regarding the actual conduct of United States foreign policy").  And, the court further noted, "[t]he United States was not directly or indirectly involved in any of the events that occurred in [Papua New Guinea]."  *Id.*  The court thus reasoned that the case was not "like *Corrie* [*v. Caterpillar*] in which the United States government financed the conduct plaintiffs sought to challenge."  *Id.*  Here, in contrast, *Caterpillar* is directly on point as discussed before.  And unlike in *Sarei*, the plaintiffs are asking the Court to judge the United States' conduct of foreign relations.[8]

Moreover, judicial restraint is particularly appropriate here because Plaintiffs are asking the Court to create a new cause of action *against the United States*—something much more appropriate for Congress to do.  *See Jesner*, 138 S. Ct. at 1404 (recognizing that Congress limited the only legislative cause of action passed under the ATS—the Torture Victim Protection Act—to just one category of defendants); *Nestle*, 141 S. Ct. at 1940 ("Congress may well decide to create a cause of action against one category of defendants but not another.").  Recognizing a new cause of action here against the United States is in tension with the Senate's ratification of the Genocide Convention as a non-self-executing treaty that affords no private right of action and with the Genocide Implementation Act, which limits implementation to only criminal prosecution.  Indeed,

---

[8] Although Plaintiffs also seek to rely on *Al-Tamimi v. Adelson*, 916 F.3d 1 (D.C. Cir. 2019), the case did not analyze the second step of the *Sosa* test at all, and in any event, as discussed above, *see supra* at 5, it is distinguishable because it did not call upon the court to judge U.S. foreign policy or the actions of the Israeli military.

1  Congress specifically provided that the Implementation Act shall not "be construed as creating any

2  substantive or procedural right enforceable by law by any party in any proceeding."  18 U.S.C.

3  § 1092; *but see Kadic v. Karadzic*, 70 F.3d 232, 242 (2d Cir. 1995) (a pre-*Sosa* case that drew the

4  contrary inference about § 1091 in permitting ATS suit).[9]  Recognizing a new cause of action

5  under the ATS against the United States is also in tension with Congress' passage of the FTCA,

6  which, as discussed, established an exclusive and carefully calibrated cause of action for tort claims

7  against the United States.

8  ## III.  PLAINTIFFS LACK STANDING BECAUSE THEIR ALLEGED INJURIES ARE

9  ## CAUSED BY AN INDEPENDENT THIRD PARTY

10  Defendants demonstrated in their opening brief that Plaintiffs lack standing because their

11  claims of traceability and redressability require guesswork as to how Israel, an independent

12  sovereign not before this Court, exercised, or will exercise, its judgment in conducting its military

13  campaign in Gaza.  Defs.' MTD at 13–16.  Plaintiffs protest that they have met their burden, which

14  they argue is small and relatively modest.  Pls.' Opp'n at 19, 23.  They are wrong.

15  Circuit precedent requires that "when a plaintiff alleges that government action caused

16  injury by influencing the conduct of third parties," *Mendia v. Garcia*, 768 F.3d 1009, 1013 (9th

17

18  [9] The Ninth Circuit has distinguished *Kadic* on a different ground.  *See Alperin v. Vatican Bank*,
410 F.3d 532, 562 (9th Cir. 2005).  The plaintiffs in both *Kadic* and *Alperin* invoked the ATS and

19  raised "claims tied to similar genocidal acts."  *Id.* at 542, 562.  But unlike *Kadic*, the Ninth Circuit
found the international law claims barred by the political question doctrine.  The case involved

20  claims against the Vatican Bank concerning war crimes committed by the Croatian Ustasha
political regime during WWII.  *Id.* at 559–62.  For the Vatican Bank's assistance in helping war

21  criminals flee from prosecution, the court said that the same claim "could also be levied against
the United States, which provided similar aid driven by the sudden shift in priorities from fighting

22  the Nazis to driving back Communism."  *Id.* at 560.  But "it is up to the political branches to come
to terms with these 'delicate and complex' foreign policy decisions," and it is not the role of the

23  court "sit in judgment as to whether the perceived Communist threat justified assisting alleged war
criminals."  *Id.* (cleaned up).  As for whether the Vatican Bank justly profited from slave labor,

24  the Court held that the determination would necessitate indicting the Ustasha regime for its
wartime conduct.  *Id.* at 561. But "[c]ondemning . . . a foreign government with which the United

25  States was at war" would require the court to review "an exercise of foreign policy judgment by
the coordinate political branch to which authority to make that judgment has been

26  'constitutional[ly] commit[ted].'"  *Id.*  Similarly here, it is not the Court's role to sit in judgment
of U.S. foreign policy decisions concerning the conflict in Gaza or to assess whether Israel has

27  transgressed limits imposed by international law.

28

Cir. 2014) (quoting *Nat'l Audubon Soc'y, Inc. v. Davis*, 307 F.3d 835, 849 (9th Cir. 2002)), "the plaintiff must offer facts showing that the government's unlawful conduct 'is at least a substantial factor motivating the third parties' actions,' . . . without relying on 'speculation' or 'guesswork' about the third parties' motivations," *id.* (citing *Tozzi v. U.S. Dep't of Health & Hum. Servs.*, 271 F.3d 301, 308 (D.C. Cir. 2001) and *Clapper v. Amnesty Int'l Inc.*, 568 U.S. 398, 413 (2013)). Heightened scrutiny is additionally appropriate given the Supreme Court's teaching that courts are to conduct an "especially rigorous" standing inquiry "when reaching the merits of the dispute would force [them] to decide whether an action taken by . . . [the political branches] was unconstitutional." *Clapper*, 568 U.S. at 408 (citation omitted).  Indeed, as the Supreme Court noted, courts "have often found a lack of standing in cases in which the Judiciary has been requested to review actions of the political branches in the field[] of . . . foreign affairs." *Id.* at 409; *see also In re Zappos.com, Inc.*, 888 F.3d 1020, 1026 (9th Cir. 2018) (same).

Here, Plaintiffs fail to allege, let alone establish, that the U.S. Government motivated Israel's military actions in Gaza, which began following Hamas's October 7 attack on Israel—"the deadliest day for the Jewish people since the Holocaust."[10]   Rather, Plaintiffs devote 100 paragraphs describing Israel's sovereign response to the October 7th attacks without mentioning the United States at all.  *See* Compl. ¶¶ 67–165.  At most, they allege that the United States has been supportive of Israel's right to defend itself and is willing to provide Israel "all appropriate means of support" it needs to do so.  *Id.* ¶¶ 173–74 (quoting President Biden and Vice President Harris); *see, e.g., id.* ¶¶ 176, 178, 179, 183, 187, 193, 204 (quoting statements from President Biden, Vice President Harris, Secretary of Defense Austin, and Secretary of State Blinken reiterating their support for Israel and its ability to defend itself).  Rather than alleging that U.S. support is motivating Israel's alleged unlawful conduct of war, Plaintiffs acknowledge that the United States expects Israel to comply with international law.  *Id.* ¶ 177 (quoting U.S. Department of State Spokesperson Matthew Miller as stating "[w]e expect [Israel] to follow international law, we believe that they will, and we will remain in close contact with them about it"); *see also id.*

---

[10] The White House, *Remarks by President Biden on the October 7th Terrorist Attacks and the Resilience of the State of Israel and its People*, Oct. 18, 2023, https://perma.cc/3BER-8X27.

¶ 228 (quoting National Security Advisor as stating "I think we've been clear . . . on our concerns about genocidal behavior by—by any leader. And that is not what we're seeing Israel desire to do."); *id*. ¶ 243 (quoting Department of Defense Deputy Press Secretary Sabrina Singh has stating that "we expect [weapons sent to Israel] to be used in accordance with [humanitarian laws]").

If anything, Plaintiffs' allegations show that the United States is working to ease any humanitarian crisis resulting from the conflict. They allege that the United States "successful[ly] convinced Israel to delay a ground invasion into Gaza," *id*. ¶ 219; worked with Israel and Egypt to establish a safe passage corridor, *id*. ¶ 188; and participated in conversations to restore phone and internet communication in Gaza, *id*. ¶ 225. It is also undisputed that the United States used its influence to help establish a 7-day humanitarian pause and allow for greater amounts of humanitarian aid to enter Gaza. Defs.' MTD at 4–5 & n.8. Plaintiffs speculate that without the U.S. aid to Israel, Israel would refrain from attacking Hamas in Gaza. That kind of guesswork clearly does not establish traceability. *See, e.g., Salmon Spawning & Recovery All. v. Gutierrez*, 545 F.3d 1220, 1228 (9th Cir. 2008) (noting the lack of traceability where even if the U.S. withdrew from an international agreement, the plaintiff could still be injured by the independent acts of another country). And neither of the cases Plaintiffs cite are to the contrary because they did not involve private plaintiffs seeking to direct the United States to influence the prospective military conduct of a foreign sovereign. Pls.' Opp'n at 22 (citing *Brill v. Chevron Corp.*, ---F. Supp. 3d---, 2017 WL 76894, at *1–3 (N.D. Cal. Jan. 9, 2017), and *Ning Xianhua v. Oath Holdings, Inc.*, 536 F. Supp. 3d 535, 549–51 (N.D. Cal. 2021)).

Nor can Plaintiffs satisfy their burden on redressability. Plaintiffs contend that their harms are redressable through an injunction against Defendants, Pls.' Opp'n at 24, yet the unmistakable goal of their lawsuit is to stop Israel from "continu[ing] its [alleged] genocidal attacks on Palestinian people in Gaza." *Id*. Even if the Court were to order the United States to cease military, financial, and diplomatic support for Israel, there is no indication that such an order would redress Plaintiffs' alleged injuries. There is no way to predict how Israel's conduct would change, and the

Court is certainly in no position to make that evaluation.[11]  "Federal courts are simply not well-suited to draw the types of inferences regarding foreign affairs and international responses to U.S. policy that Plaintiffs' theory of causation posits."  *Fryshman v. U.S. Comm'n for Pres. of Am.'s Heritage Abroad*, 422 F. Supp. 3d 1, 8 (D.D.C. 2019) (citation omitted).

Plaintiffs rely on *Japan Whaling Ass'n v. American Cetacean Society*, 478 U.S. 221 (1986), where plaintiffs sought to compel the Secretary of Commerce to certify that Japan was violating international whaling agreements.  *See* Pls.' Opp'n at 24–25.  But that case did not discuss redressability; it concerned the political question doctrine.  To be sure, in *Talenti v. Clinton*, 102 F.3d 573 (D.C. Cir. 1996), the D.C. Circuit suggested that redressability might not have been a jurisdictional barrier in *Japan Whaling* because there existed a "track record suggesting that the threat of [U.S.] sanctions would compel compliance with the whaling agreements." *Id.* at 578. Because there was no similar track record in *Talenti*, no redressability was established.  *Id.*

Plaintiffs have not alleged a "track record" showing that the withdrawal of U.S. support from Israel would impact how Israel employs its military, such that the court could reasonably infer that doing so here would change Israel's asserted goal to eliminate Hamas.  Plaintiffs' "most dramatic example" of a purported track record is based on an incident during the Israeli-Lebanese conflict in 1982.  Pls.' Opp'n 25 n.11.  Citing a 1982 New York Times news report on a call between then-President Reagan and then-Prime Minister Menachem Begin after an Israeli bombing raid on west Beirut, Plaintiffs assert that President Reagan's call resulted in a ceasefire within 30 minutes.  *Id.* (citing Pls.' Opp'n Ex. 8, Decl. of Sadaf M. Doost Ex. D-1, ECF No. 44-9).  But the article does not report that the ceasefire occurred as a result of any threat to withdraw or suspend American arms aid.  When asked whether such threats were made, the then-Deputy White House Press Secretary refused to discuss the issue and a State Department official was reported to say that no direct threats had been made.  *See* Doost Decl. Ex. D-1.  Plaintiffs' other

---

[11] Emily Rose, *Netanyahu denies reports of US influence over Israeli military activity*, Reuters (Dec. 24, 2023), https://perma.cc/J3AQ-MYXS (quoting Israeli Prime Minister Benjamin Netanyahu:  "Israel is a sovereign state. Our decisions in the war are based on our operational considerations, and I will not elaborate on that."  "The decision on how to use our forces is an independent decision of the IDF and no-one else.").

examples also do not contain evidence of any similar U.S. threat to withhold aid.  *See* Pls.' Opp'n 25 n.11 (citing Doost Decl. Ex. D-2 & D-3).

In the end, the fact that the U.S. Government has sought to use its diplomatic levers to influence Israel in the past in no way allows this Court to predict how Israel might respond if the Court were to order the United States to withhold aid, effectively eliminating a lever of diplomatic influence over Israel.  Plaintiffs' alleged harms simply are not redressable by this Court.  *See, e.g.*, *Indigenous People of Biafra v. Blinken*, 639 F. Supp. 3d 79, 87 (D.D.C. 2022) (noting "the 'vast leverage' [of] the political branches" that could be used "to pressure the Nigerian government," but concluding that it would be "pure conjecture" as to the Nigerian government's response to the requested court order); *see also Bernstein v. Kerry*, 962 F. Supp. 2d 122, 129–30 (D.D.C. 2013) ("It is nothing more than conjecture to argue that changing U.S. funding policies [for the Palestinian people] will reduce terrorism or plaintiffs' subjective fears."), *aff'd*, 584 F. App'x 7 (D.C. Cir. 2014); *Aerotrade, Inc. v. U.S. Agency for Int'l Dev., Dep't of State*, 387 F. Sup. 974, 975–76 (D.D.C. 1974) (plaintiff injured by Haitian government's breach of contract lacked standing to seek an order terminating assistance to Haiti pursuant to a statutory provision prohibiting assistance to any government that repudiates a contract with a U.S. citizen, in part because there was "considerable uncertainty as to whether [assistance cutoff] would aid plaintiff in collecting its debt or would tend to drive Haiti into even greater intransigence").

In sum, because the Court lacks jurisdiction, it should dismiss the Complaint and deny the preliminary injunction motion as moot.

## IV.   THE BALANCE OF EQUITIES TIPS AGAINST ISSUANCE OF AN INJUNCTION

In this Circuit, "the likelihood of success on the merits" is a "threshold inquiry," and in the absence of such a showing, the Court "need not consider the remaining three" injunction factors under *Winter v. Nat. Res. Def. Council, Inc.,* 555 U.S. 7, 20 (2008).  *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015).  Because this Court is without jurisdiction to proceed, there is no need to examine the remaining factors, and, in any event, the balance of harms decidedly tip against the issuance of an injunction.  *See* Defs.' MTD at 18–19.  Plaintiffs' response on the margins is unavailing.

Citing *Fellowship of Christian Athletes v. San Jose Unified School District Board of Education*, 82 F.4th 664, 684 (9th Cir. 2023), Plaintiffs argue that they need only "raise only 'serious questions' on the merits—a lesser showing than likelihood of success," *id.*, because the balance of the equities tips sharply in their favor. *See* Pls.' Opp'n at 27. But Plaintiffs seek a mandatory injunction that would alter the status quo; such "injunctions are 'particularly disfavored,' . . . and place a higher burden on the plaintiff to show the facts and law clearly favor the moving party." *Fellowship*, 82 F.4th at 684 (cleaned up); *see Martin v. Int'l Olympic Comm.*, 740 F.2d 670, 675 (9th Cir. 1984) ("[Where] a party seeks mandatory preliminary relief that goes well beyond maintaining the status quo pendente lite, courts should be extremely cautious about issuing a preliminary injunction." (emphasis omitted)).

Plaintiffs argue that the injunctive relief they seek is prohibitory rather than mandatory because it would prohibit Defendants from transferring more weapons to the Israeli government. Pls.' Opp'n at 27. This argument misses the mark because "[t]he inquiry is whether the party seeking the injunction seeks to alter or maintain the status quo." *Fellowship*, 82 F.4th at 684. Here, as Plaintiffs admit, the status quo consists of decades of U.S. military, diplomatic, and financial aid for Israel, Compl. ¶ 167, including support for $38 billion in military assistance to Israel from 2019–2028, *id.* ¶ 168. An order prohibiting further aid to Israel would alter the status quo, and is not a prohibitory injunction "that prohibit[s] enforcement of a new law or policy." *Ariz. Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1061 (9th Cir. 2014).

In any event, even were the Court to apply the standard Plaintiffs propose—i.e., a serious question on the merits—it still makes no difference. As amply demonstrated above, the Court has no jurisdiction to proceed, Plaintiffs' requested relief is barred by the FTCA, and they have no cause of action under the ATS. More importantly, an injunction would intrude into areas committed to the political branches of the government and violate constitutional separation of powers. Accordingly, a preliminary injunction is unwarranted.

## CONCLUSION

For these reasons, the Court should grant Defendants' motion to dismiss and deny Plaintiffs' motion for a preliminary injunction.

DEFS.' REPLY IN SUPPORT OF MOTION TO DISMISS, CASE NO. 4:23-cv-05829-JSW

Dated: January 12, 2024

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General
Civil Division

DIANE KELLEHER
Assistant Branch Director
Federal Programs

JEAN LIN
Special Litigation Counsel

/s/ Jonathan D. Kossak
JONATHAN D. KOSSAK
Trial Attorney (DC Bar No. 991478)
U.S. Department of Justice
Federal Programs Branch
1100 L Street, NW,
Washington, DC 20005
Tel. (202) 305-0612
Email: Jonathan.kossak@usdoj.gov

Counsel for Defendants

1

## <u>CERTIFICATE OF SERVICE</u>

2          I hereby certify that on the 12th day of January, 2024, I electronically transmitted the

3  foregoing document to the Clerk of the Court using the ECF system for filing.

4

5  Dated: January 12, 2024                     /s/ *Jonathan D. Kossak*

6                                              JONATHAN D. KOSSAK
                                               Trial Attorney (DC Bar No. 991478)
7                                              U.S. Department of Justice
                                               Federal Programs Branch
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28