Marc Van Der Hout, Cal. Bar No. 80778
Johnny Sinodis, Cal. Bar No. 290402
Van Der Hout LLP
360 Post Street, Suite 800
San Francisco CA 94108
(415) 981-3000
ndca@vblaw.com

Sadaf M. Doost, Cal. Bar No. 346104
Baher A. Azmy, admitted *pro hac vice*
Katherine Gallagher, admitted *pro hac vice*
Maria C. LaHood, admitted *pro hac vice*
Astha Sharma Pokharel, admitted *pro hac vice*
Samah Sisay, admitted *pro hac vice*
Pamela C. Spees, admitted *pro hac vice*
Center for Constitutional Rights
666 Broadway, 7th Floor
New York, NY 10012
(212) 614-6462
sdoost@ccrjustice.org
bazmy@ccrjustice.org
kgallagher@ccrjustice.org
mlahood@ccrjustice.org
asharmapokharel@ccrjustice.org
ssisay@ccrjustice.org
pspees@ccrjustice.org

Attorneys for Plaintiffs DEFENSE FOR CHILDREN INTERNATIONAL – PALESTINE, et al.

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

DEFENSE FOR CHILDREN INTERNATIONAL – PALESTINE; AL-HAQ; AHMED ABU ARTEMA; MOHAMMED AHMED ABU ROKBEH; MOHAMMAD HERZALLAH; A.N.; LAILA ELHADDAD; WAEIL ELBHASSI; BASIM ELKARRA; and DR. OMAR EL-NAJJAR

Plaintiffs,

v.

JOSEPH R. BIDEN, JR., *President of the United States,* ANTONY J. BLINKEN, *Secretary of State,* LLOYD JAMES AUSTIN III, *Secretary of Defense,* in their official capacities,

Defendants.

Case No.: 23-cv-5829

**PLAINTIFFS' SUR-REPLY TO DEFENDANTS' MOTION TO DISMISS REPLY**

Hearing: January 26, 2024, at 9:00 am

For the first time on Reply, Defendants make two entirely new arguments that the Alien Tort Statute ("ATS") is "unavailing" (1) because relief is barred by the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346(b)(1), and (2) because the Court has no authority to recognize a private cause of action against Defendants under the ATS. Defs.' Reply Br. 6-15, ECF No. 64. This Sur-Reply addresses only these two new arguments. In sum, the Administrative Procedure Act ("APA") waives sovereign immunity for equitable relief, and the FTCA, which only addresses state law damages claims, does not address (much less forbid) equitable relief or federal common law claims, as those brought by Plaintiffs. *See* Sec. I.A. Though not covered by the APA, Defendant Biden's immunity is also waived for equitable claims challenging *ultra vires* and unconstitutional actions. *See* Sec. I.B. Regardless, there can be no sovereign immunity for violations of *erga omnes* obligations, as alleged here. *See* Sec. I.C. Finally, claims against Defendants for complicity in and failure to prevent genocide are recognized causes of action under the ATS. *See* Sec. II.

## ARGUMENT

**I. DEFENDANTS DO NOT ENJOY SOVEREIGN IMMUNITY OVER PLAINTIFFS' CLAIMS BROUGHT UNDER 28 U.S.C. § 1331 AND § 1350.**

**A. The Federal Tort Claims Act Does Not Foreclose Equitable Relief Otherwise Authorized Under the APA's Waiver of Sovereign Immunity.**

Defendants cannot dispute that the APA expressly and broadly waives the United States' sovereign immunity for claims "seeking relief other than money damages." 5 U.S.C. § 702. They nevertheless suggest, incorrectly, that application of that waiver to Plaintiffs' claims, brought pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and § 1350 (ATS) seeking injunctive and declaratory relief for violations of customary international law as part of federal common law,[1] is

---

[1] Plaintiffs bring their claims under 28 U.S.C. § 1331 (federal question jurisdiction) and § 1350 (ATS). *See* Compl. ¶ 33, ECF No. 1; Pls.' Prelim. Inj. Reply Br. 6-11, ECF No. 44. These two bases of jurisdiction are independent, although they overlap (with the ATS being limited to non-citizens) and reinforce the recognition of customary international law as part of federal common law from the

somehow foreclosed under Section 702(2) of the APA because the FTCA "expressly or impliedly forbids the relief which is sought." Defs.' Reply Br. 7. But the FTCA provides a remedy—money damages—for conduct by the United States that is tortious under state law; it does not address, much less forbid, claims brought under federal common law, nor does it address or forbid the form of relief sought by Plaintiffs: equitable relief.[2]

First, Plaintiffs' claims are based on federal common law; because the FTCA only addresses state tort law it cannot "expressly or impliedly forbid[]" relief for Plaintiffs' federal law claims. 5 U.S.C. § 702. Defendants' argument that the FTCA is Plaintiffs' exclusive remedy flies in the face of clear Supreme Court instruction that where "federal law, not state law, provides the source of liability for" plaintiffs' claim, the claim is not cognizable under FTCA, and so "the FTCA does not constitute [the] 'exclusive' remedy." *FDIC v. Meyer*, 510 U.S. 471, 478 (1994); *see id.* at 471-72 ("There simply is no basis in the statutory language for the interpretation suggested by FDIC, which would deem all claims 'sounding in tort'—including constitutional torts—'cognizable' under § 1346(b)"). *See also Delta Sav. Bank v. United States*, 265 F.3d 1017, 1024 (9th Cir. 2001) (an FTCA claim cannot be based on a violation of federal law);[3] *Michigan v. U.S. Army Corps of Eng'rs*, 667 F.3d 765, 776 (7th

---

founding of this country to modern times, and the availability of claims arising thereunder. Although Defendants now challenge the viability of Plaintiffs' claims under the ATS, they have not contested the Court's jurisdiction under § 1331 or attempted to rebut Plaintiffs' arguments related thereto, *see id.*, and concede that genocide is among the "limited category of claims" cognizable under federal common law. Defs.' Reply Br. 12. Under § 1331, *all* Plaintiffs in this action have standing to bring these claims for declaratory and injunctive relief. *See also* U.S. Const. art. III, § 2 (extending judicial power to "all cases, in Law and Equity, arising under this Constitution, the Laws of the United States, and Treaties made," to "Controversies to which the United States shall be a Party," and to cases between "foreign States, Citizens, or Subjects" and citizens of the United States").

[2] The FTCA "was the offspring of a feeling that the Government should assume the obligation to pay damages for the misfeasance of employees in carrying out its work." *Dalehite v. United States*, 346 U.S. 15, 24 (1953).

[3] Defendants incorrectly cite both *Meyer* and *Delta Savings Bank* for the proposition that when "'federal law, not state law, provides the source of liability,' the United States 'simply has not rendered itself liable.'" Defs.' Reply Br. 9 (quoting *Meyer*, 510 U.S. at 478). But the full quote is: "the United States simply has not rendered itself liable *under § 1346(b) [the FTCA] for constitutional tort claims*."

PLAINTIFFS' SUR-REPLY TO                            2                            Case No. 23-CV-5829
DEFENDANTS' MOTION TO DISMISS REPLY

Cir. 2011) ("the FTCA does not apply to *any* federal common-law tort claim, no matter what relief is sought" and "there is no reason to think that it implicitly forbids a particular type of relief for a claim outside its scope"). Here, federal common law, not state tort law, provides the source of liability for Plaintiffs' claims. The FTCA cannot constitute a remedy for Plaintiffs' federal law claims, much less the "exclusive remedy," and so does not forbid the application of the APA waiver.

Second, the FTCA also does not address, much less forbid, the form of relief sought by Plaintiffs: equitable relief, not monetary damages. Nothing in the FTCA forecloses the equitable relief (sought here for violations of federal common law), which Section 702 of the APA expressly authorizes, codifying in the APA the inherent equitable powers of courts "reflect[ed in] a long history of judicial review of illegal executive action, tracing back to England." *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 327 (2015).[4]

The Ninth Circuit could not be more clear that Section 702 of the APA waives "'whatever sovereign immunity the United States enjoyed from prospective relief' with respect to 'any action for injunctive relief.'" *Navajo Nation v. Dep't of the Interior*, 876 F.3d 1144, 1171 (9th Cir. 2017) (quoting *Cabrera v. Martin*, 973 F.2d 735, 741 (9th Cir. 1992)) (applying APA waiver of sovereign immunity to federal breach of trust claim). Indeed, the Ninth Circuit has emphasized that Section 702 sought to expand, and remove any ambiguity about, the availability of equitable claims against federal officials, *supplemental* to the FTCA waiver of sovereign immunity recognized for certain damages claims. "Congress noted that 'great strides' toward making government accountable to citizens had already

---

*Meyer*, 510 U.S. at 478 (emphasis added). As noted above, *Meyer* makes clear that the FTCA does not address, and cannot be deemed the exclusive remedy for, violations of federal common law.

[4]   Indeed, equitable relief has been available to constrain unlawful federal and state official activity for over a century. *Ex parte Young*, 209 U.S. 123 (1908) (authorizing equitable relief in official-capacity suits against state officers); *Edelman v. Jordan*, 415 U.S. 651 (1974) (recognizing that suits against state officials for prospective relief are not barred by state sovereign immunity while suits for damages are); *Armstrong*, 575 U.S. at 327 (affirming that *Ex parte Young* principle applies to federal officers).

been made in the Federal Tort Claims Act and the Tucker Act, and that the amendment to § 702 was designed to 'strengthen this accountability by withdrawing the defense of sovereign immunity in actions seeking relief other than money damages, such as an injunction, declaratory judgment, or writ of mandamus.'" *The Presbyterian Church (U.S.A.) v. United States*, 870 F.2d 518, 524 (9th Cir. 1989) (internal quotations omitted). *See also Trudeau v. Fed. Trade Comm'n,* 456 F.3d 178, 186 (D.C. Cir. 2006) (noting that Congress expected the waiver to apply to non-statutory actions as well).

Significantly, the APA waiver of sovereign immunity has been applied to ATS claims for non-monetary relief, despite the existence of the FTCA, further undermining Defendants' argument. *See Rosner v. United States*, 231 F. Supp. 2d 1202, 1212 (S.D. Fla. 2002); *Al Otro Lado, Inc. v. Nielsen*, 327 F. Supp. 3d 1284, 1308 (S.D. Cal. 2018); *Iran Thalassemia Soc'y v. Off. of Foreign Assets Control*, No. 3:22-CV-1195-HZ, 2022 WL 9888593, at *7 (D. Or. Oct. 14, 2022), *appeal dismissed*, No. 22-35850, 2022 WL 18461465 (9th Cir. Dec. 1, 2022). Defendants cite no authority to the contrary. The same is true for relief sought under § 1331. *See Clinton v. Babbitt*, 180 F.3d 1081, 1087 (9th Cir. 1999) (internal quotation omitted) ("[i]n 5 U.S.C. § 702, the United States expressly waived 'sovereign immunity in non-statutory review actions for nonmonetary relief brought under 28 U.S.C. § 1331'").

Other courts have conclusively rejected the government's argument that the FTCA forecloses injunctive claims, as that "would seriously undermine Congress's effort in the APA to authorize [relief other than money damages] against the United States." *Michigan*, 667 F.3d at 775; *id.* ("[t]here is nothing in the [FTCA] suggesting that Congress meant to forbid all actions that were not expressly authorized"); *see also Texas v. U.S. Dep't of Homeland Sec.*, 88 F.4th 1127, 1134–35 (5th Cir. 2023) (holding that FTCA is not even "the exclusive remedy for all *state* tort actions" where plaintiff sought equitable relief) (emphasis added), *appeal filed sub nom. Dep't of Homeland Sec. v. Texas*, No. 23A607 (U.S. Jan. 2, 2024); *U.S. Info. Agency v. Krc*, 989 F.2d 1211, 1216 (D.C. Cir. 1993) (although "FTCA specifically bars money damages as a remedy for" claim of tortious interference with

prospective economic advantage, "injunctive relief is available" under APA waiver of sovereign immunity).

Defendants misplace reliance on *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209 (2012), which involved a property dispute rather than the FTCA or customary international law claims, Defs.' Reply Br. 8, and actually supports Plaintiffs' argument as it reinforces the broad availability of sovereign immunity waivers in the APA when the plaintiff brought "a different claim, seeking different relief, from the kind" than the statute in that case (Quiet Title Act) addressed. *Patchak*, 567 U.S. at 222; *id.* at 217 (Quiet Title Act "addresses a kind of grievance different" from that plaintiff raised). Similarly here, Plaintiffs raise claims based on federal common law, which the FTCA was not intended to address, and are seeking equitable relief, which the FTCA also does not address, leaving the APA waiver to apply in full. Indeed, Defendants' cases lend further support to Plaintiffs' claims as they reinforce the elementary principle that the APA waives sovereign immunity for equitable claims.[5]

**B.     The *Larson* Exceptions Waive the President's Sovereign Immunity.**

Where the APA waiver does not apply, as with Defendant President Biden, the *Larson* framework does. *See Larson v. Domestic & Foreign Com. Corp.*, 337 U.S. 682, 695 (1949); *E. V. v.*

---

[5]     *Lee v. U.S. Air Force,* for example, an unreported, out-of-circuit case cited by Defendants to suggest that the FTCA forecloses any claim by Plaintiffs, Defs.' Reply Br. 10-11, actually demonstrates how these claims are reviewable under the APA. There, the court held that "*any violation that comes within the terms of federal question jurisdiction*, combined with the waiver of sovereign immunity from the APA, allows a district court to review the claim." No. CV 98-1056 BB, 1999 WL 35808305, at *6 (D.N.M. Nov. 18, 1999) (emphasis added). Unlike Plaintiffs here, the *Lee* plaintiff "fail[ed] to present any evidence these claims [fell] within the federal question statute." *Id*. Further, *FDIC v. Craft*, 157 F.3d 697, 706 (9th Cir. 1998), *Moon v. Takisaki,* 501 F.2d 389, 390 (9th Cir. 1974), and *Westbay Steel, Inc. v. United States,* 970 F.2d 648, 651 (9th Cir. 1992) do not address the APA waiver for equitable claims at all and merely reiterate that the FTCA provides only for money damages. *Sharp v. Weinberger,* 798 F.2d 1521, 1523–24 (D.C. Cir. 1986) is similarly unavailing, as the D.C. Circuit has since ruled that the reasoning in that case does not apply to the FTCA. *Krc*, 989 F.2d at 1216.

*Robinson*, 906 F.3d 1082, 1092 (9th Cir. 2018) (the 1976 amendment to the APA "did not abrogate the [*Larson*] exceptions where the waiver does not apply"). The *Larson* exceptions apply to waive sovereign immunity over *ultra vires* and unconstitutional actions by the President where the plaintiff seeks equitable relief. *Murphy Co. v. Biden*, 65 F.4th 1122, 1128-30 (9th Cir. 2023). *See also Sierra Club v. Trump*, 929 F.3d 670, 696–97 (9th Cir. 2019); *Chamber of Com. of U.S. v. Reich*, 74 F.3d 1322, 1329-30 (D.C. Cir. 1996). Because the President has no discretion to avoid federal common law obligations, deemed a *jus cogens* norm and *erga omnes* obligation, related to preventing and not being complicit in genocide, the *Larson* waiver of the President's sovereign immunity applies. *See infra* Sec. I(C).

### C. Defendants Do Not Have Sovereign Immunity Over Breaches of *Erga Omnes* Obligations and *Jus Cogens* Violations.

Finally, there can be no claim to sovereign immunity for breaches of *erga omnes* obligations, which also constitute violations of *jus cogens* norms. As the Ninth Circuit explained, "universal and fundamental rights of human beings identified by Nuremberg—rights against genocide[,] . . . these norms, which include 'principles and rules concerning the basic rights of the human person,' are the concern of all states; 'they are obligations *erga omnes*.'" *Siderman de Blake v. Republic of Argentina,* 965 F.2d 699, 715 (9th Cir. 1992) (quotations omitted). In its submission to the International Court of Justice in 2022, the Biden administration reaffirmed that *erga omnes partes* obligations leave States Parties—including the United States—with no "interests of their own; they merely have, one and all, a common interest, namely, the accomplishment of those high purposes which are the raison d'etre of the [Genocide] Convention." Declaration of Intervention Under Article 63 of Statute Submitted by the United States of America, *Allegations of Genocide under Convention on Prevention and Punishment of Crime of Genocide (Ukr. v. Russ.*), I.C.J., ¶ 9 (Sept. 7, 2022) (citation omitted). It follows, therefore, that acts taken contrary to the obligations to prevent, and not further, genocide, as breaches of law and

*unlawful acts*, cannot be considered "sovereign" acts due respect and accorded immunity. *See, e.g., Chuidian v. Phil. Nat'l Bank*, 912 F.2d 1095, 1106 (9th Cir. 1990) *abrogated on other grounds by Samantar v. Yousuf*, 560 U.S. 305 (2010) (no immunity for acts exceeding those authorized in official capacity); *Yousuf v. Samantar*, 699 F.3d 763, 776 (4th Cir. 2012) ("*jus cogens* violations are, by definition, acts that are not officially authorized by the Sovereign"); *Mireskandari v. Mayne*, No. CV 12-3861 JGB (MRWx), 2016 WL 1165896, at *17 (C.D. Cal. Mar. 23, 2016) (following *Samantar*), *aff'd*, 800 F. App'x 519 (9th Cir. 2020). Moreover, the nature of the *affirmative obligations* undertaken by the United States and its officials in relation to the "crime of crimes"—genocide—for which the United States disavowed any self-interest is fundamentally different in kind than even the universally recognized wrong of extrajudicial killing at issue in *Quintero Perez v. United States*, 8 F.4th 1095 (9th Cir. 2021).[6]

Federal sovereign immunity has no constitutional provenance; it is a creature of federal common law. *See, e.g., Al Shimari v. CACI Premier Tech., Inc.*, 368 F. Supp. 3d 935, 944 n.4, 952 n.7 (E.D. Va. 2019). The ATS is a jurisdictional statute that instructs judges to look to federal common law (as informed by the law of nations) for substantive rules of decision. *Sosa v. Alvarez-Machain*, 542 U.S. 692, 732 (2004); *see also Nat'l Farmers Union Ins. Cos. v. Crow Tribe of Indians,* 471 U.S. 845, 850 (1985) (discussing § 1331's grant of jurisdiction over federal common law claims). Where, as here, the relevant substantive law creates an *erga omnes* obligation to prevent and not be complicit in genocide, qualifying as *jus cogens* norms, such norms must take precedence over Defendants' common law assertion of domestic sovereign immunity. *See Al Shimari*, 368 F. Supp. 3d at 963

---

[6]   *See* Genocide Convention art. IV (prescribing punishment for all persons committing any form of genocide irrespective of "whether they are constitutionally responsible rulers, public officials or private individuals.").

(prohibition on *jus cogens* violations "necessarily" imposes a "rule requiring an effective means to redress that violation," lest the "prohibitory norm itself would be toothless").

## II. THE ATS AUTHORIZES A CAUSE OF ACTION AGAINST DEFENDANTS FOR THE GENOCIDE-RELATED VIOLATIONS.

Defendants concede, Defs.' Reply Br. 11-12, as they must, that complicity in (e.g. "aiding and abetting") genocide is a "specific, universal and obligatory" norm that satisfies the threshold requirement for recognizing an ATS cause of action under *Sosa*. 542 U.S. at 732, 748-49. *See also* Pls.' Prelim. Inj. Reply Br. 6-11 (demonstrating that preventing genocide and complicity are international legal obligations with *jus cogens* status satisfying *Sosa*). Despite this, Defendants argue that the Court should decline to "create" an ATS cause of action at Step Two of the *Sosa* framework.

First, Plaintiffs do not ask this Court to *create* a new cause of action, but to recognize one that already exists. *Id*. at 8-10; *see also Sarei v. Rio Tinto, PLC*, 671 F.3d 736, 759 (9th Cir. 2011) (en banc), *vacated on other grounds sub nom. Rio Tinto PLC v. Sarei*, 569 U.S. 945 (2013) (noting with regard to genocide that Congress' "'decision not to create a *new* private remedy' does not repeal the pre-existing remedy under the ATS" (emphasis in original) (quoting *Kadić v. Karadžić*, 70 F.3d 232, 242 (2d Cir. 1995)).

Second, as Defendants concede, Defs.' Reply Br. 13, the asserted foreign policy concern with these ATS claims is redundant of Defendants' political question arguments that Plaintiffs refuted: it fails under the critical distinction between *discretionary* foreign policy decisions, which may be nonjusticiable, and decisions that are non-discretionary because they are constrained by a legal duty and are therefore necessarily subject to the elementary requirement of judicial review. Pls.' Prelim. Inj. Reply Br. 11-19.[7] While the Supreme Court indicated in *Sosa* that the political question may be

---

[7] The Ninth Circuit's decisions in *Sarei* and *Corrie v. Caterpillar, Inc.*, 503 F.3d 974 (9th Cir. 2007) do not advance Defendants' argument, Defs.' Reply Br. 14, because they stand for the

one means of avoiding "collateral consequences" that judges should consider in exercising "judicial caution," *Sosa*, 542 U.S. at 725, 727, it rejected Defendants' suggested wholesale foreign affairs or national security exception for ATS claims, especially when U.S. courts are asked to enforce limits on "our own" federal government. *Id.* at 727-28. To grant Defendants' carve-out would swallow the rule regarding enforcement of customary international law given that ATS cases routinely touch on issues of foreign relations and national security, and no court has ever created such an all-encompassing exception. *See, e.g.*, *Al Shimari v. CACI Premier Tech., Inc.*, 840 F.3d 147, 159 (4th Cir. 2016) (claims of national security or military commands do not foreclose ATS claims of torture and war crimes); *Sarei*, 671 F.3d at 758-64 (genocide and war crimes); *Kadić*, 70 F.3d at 242 (war crimes and genocide); *In re Estate of Ferdinand Marcos, Hum. Rts. Litig.*, 25 F.3d 1467, 1475 (9th Cir. 1994) (foreign military's torture).

Finally, contrary to Defendants' suggestion, Defs.' Reply Br. 11, United States defendants are not exempt from ATS liability and courts have permitted ATS causes of action against them. *See, e.g. Al Otro Lado v. Nielsen,* 327 F. Supp. 3d at 1308 (allowing ATS claim to proceed against federal official-capacity defendants in ATS case relating to violation of *nonrefoulement* norm);[8] *C.D.A. v. United States*, No. 21-469, 2023 WL 2666064, at *18-20 (E.D. Pa. Mar. 28, 2023) (no immunity from suit when U.S. government violates *jus cogens* norms); *see also Al Shimari*, 368 F. Supp. 3d at 968 (holding United States not immune from ATS claim brought by third-party plaintiff for torture and

---

uncontested proposition that discretionary foreign policy judgments of the United States—as opposed to firm legal obligations—are not amenable to judicial review.

[8] The district court later held that there was no ATS claim on the merits due to the uncertainty of non-refoulement norm, which is currently on appeal to the 9th Circuit. *Al Otro Lado, Inc. v. Mayorkas*, No. 17-CV-02366-BAS-KSC, 2021 WL 3931890, at *23 (S.D. Cal. Sept. 2, 2021), *judgment entered*, 2022 WL 3970755 (S.D. Cal. Aug. 23, 2022), *appeal filed sub nom. Al Otro Lado v. Mayorkas*, No. 22-55988 (9th Cir. Oct. 25, 2022).

war crimes).[9] Moreover, the Supreme Court ATS jurisprudence relied on by Defendants to urge a United States exception to the law only supports the viability and propriety of recognizing ATS claims here—and of holding the United States and its officials to account in this forum. As the Court explained in *Jesner v. Arab Bank, PLC*, upon which the government relies, the congressional purpose in enacting the ATS is "to promote harmony in international relations by *ensuring foreign plaintiffs a remedy* for international-law violations in circumstances *where the absence of such a remedy* might provoke foreign nations to hold the United States accountable." 138 S. Ct. 1386, 1406 (2018) (emphasis added) (citing United States Amicus Br. 7). There could hardly be a stronger case for recognizing a cause of action in a United States court than this one, where the violation alleged is a failure to prevent and complicity in genocide, the crime of crimes, ranking among a small number of human rights violations that are "repugnant to all civilized peoples." *Id.* at 1401. Indeed, the failure to provide a domestic forum for adjudication of these claims in particular could provoke the very concerns articulated in *Jesner* about accountability in foreign nations or courts.

**CONCLUSION**

For the foregoing reasons, this Court should deny Defendants' Motion to Dismiss, and grant Plaintiffs' Preliminary Injunction Motion.

---

[9] Defendants appear to argue—with citation to no authority—that the existence of a parallel legal obligation under the Genocide Convention or domestic criminal law somehow preempts an ATS remedy. Defs.' Reply Br. 14. That is not how the ATS works. *See Flomo v. Firestone Nat. Rubber Co.,* 643 F.3d 1013, 1022 (7th Cir. 2011) (Posner, J.) ("the fact that Congress may not have enacted legislation implementing a particular treaty or convention . . . does not make a principle of customary international law evidenced by the treaty or convention unenforceable in U.S. courts."). The argument also runs headlong into foundational ATS jurisprudence that has, for example, regularly recognized an ATS cause of action for torture and war crimes, despite the parallel existence of a range of domestic law prohibitions on those crimes. *See e.g. Sosa*, 542 U.S. at 728 (quoting with approval *Filártiga v. Peña–Irala,* 630 F.2d 876, 890 (2d Cir. 1980)) (torture); *Al Shimari v. CACI Premier Tech., Inc.*, 758 F.3d 516, 525-31 (4th Cir. 2014) (torture and war crimes).

Dated: January 16, 2024

Johnny Sinodis, Cal. Bar No. 290402
Marc Van Der Hout, Cal. Bar No. 80778
Van Der Hout LLP
360 Post Street, Suite 800
San Francisco, CA 94108
(415) 981-3000
ndca@vblaw.com

Respectfully submitted,

*/s/ Astha Sharma Pokharel*
Astha Sharma Pokharel, admitted *pro hac vice*
Sadaf M. Doost, Cal. Bar No. 346104
Baher A. Azmy, admitted *pro hac vice*
Katherine Gallagher, admitted *pro hac vice*
Maria C. LaHood, admitted *pro hac vice*
Samah Sisay, admitted *pro hac vice*
Pamela C. Spees, admitted *pro hac vice*
Center for Constitutional Rights
666 Broadway, 7th Floor
New York, NY 10012
(212) 614-6462
asharmapokharel@ccrjustice.org
sdoost@ccrjustice.org
bazmy@ccrjustice.org
kgallagher@ccrjustice.org
mlahood@ccrjustice.org
ssisay@ccrjustice.org
pspees@ccrjustice.org