| | |
|---|---|
| DEFENSE FOR CHILDREN INTERNATIONAL-PALESTINE; AL-HAQ; AHMED ABU ARTEMA; MOHAMMED AHMED ABU ROKBEH; MOHAMMAD HERZALLAH; LAILA ELHADDAD; WAEIL ELBHASSI; BASIM ELKARRA; OMAR AL-NAJJAR, Dr.; AYMAN NIJIM,       *Plaintiffs - Appellants*,   v. JOSEPH R. BIDEN, President of the United States; ANTONY J. BLINKEN, Secretary of State; LLOYD J. AUSTIN III, Secretary of Defense, in their official capacities,       *Defendants - Appellees*, | No. 24-704 D.C. No. 4:23-cv-05829-JSW OPINION |

Appeal from the United States District Court
for the Northern District of California

Jeffrey S. White, District Judge, Presiding

Argued and Submitted June 10, 2024
San Francisco, California

Filed July 15, 2024

Before: Consuelo M. Callahan, Jacqueline H. Nguyen, and Daniel A. Bress, Circuit Judges.

Per Curiam Opinion

## SUMMARY[*]

### Political Question Doctrine

The panel affirmed the district court's dismissal, as not justiciable under the political question doctrine, of plaintiffs' action seeking to enjoin the President and other senior Executive Branch officials from providing military, diplomatic, and financial support to Israel in its ongoing operations in the Gaza Strip.

Plaintiffs are Palestinian nongovernmental organizations, residents of Gaza, and Palestinian-Americans. They alleged that the defendants violated their obligations to prevent genocide under Article I of the Genocide Convention; and that the United States' provision of military and other assistance to the Israeli government

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

made the United States complicit in genocide in violation of Article III(e) of the Genocide Convention and its implementing legislation, 17 U.S.C. § 1091, which makes genocide a federal crime. They sought wide-ranging injunctive and declarative relief.

Applying the framework outlined in *Baker v. Carr*, 369 U.S. 186, 217 (1962), the panel concluded that plaintiffs' complaint presented nonjusticiable political questions. Plaintiffs' lawsuit would place our country's strategic approach to a major world conflict under the auspices of a single federal district court. Plaintiffs' lawsuit and extraordinary requests for relief presented political questions grounded in matters committed to those branches of the government that exercise military and diplomatic prerogatives. The courts do not chart the national security and geopolitical objectives of the United States. The panel rejected plaintiffs' contention that their centering of the case around the alleged violations of legal duties took it outside the political question doctrine. The panel also rejected plaintiffs' contention that their request for a declaratory judgment avoided any political question impediment.

## COUNSEL

Katherine Gallagher (argued), Baher A. Azmy, Sadaf M. Doost, Maria C. LaHood, Astha S. Pokharel, Diala Shamas, Samah M. Sisay, and Pamela C. Spees, Center for Constitutional Rights, New York, New York; Marc Van Der Hout and Johnny Sinodis, Van Der Hout LLP, San Francisco, California; for Plaintiffs-Appellants.

Maxwell A. Baldi (argued), Sharon Swingle, and Jonathan Kossak, Appellate Staff Attorneys, Civil Division; Ismail J.

Ramsey, United States Attorney; Brian M. Boynton, Principal Deputy Assistant Attorney General; United States Department of Justice, Washington, D.C.; for Defendants-Appellees.

Jethro M. Eisenstein, Profeta & Eisenstein, New York, New York; Alan Levine, Levine & Partners, Miami Beach, Florida; for Amicus Curiae A Jewish Voice for Peace, Inc..

Elzbieta T. Matthews and Carmen K. Cheung, Center for Justice & Accountability, San Francisco, California, for Amicus Curiae Center for Justice & Accountability.

Maria Kari, Law Office of Maria Kari PLLC, Houston, Texas; Christopher Godshall-Bennett, American-Arab Anti-Discrimination Committee, Washington, D.C.; for Amici Curiae Eleven Civil Rights and Grassroots Organizations.

Marco Simons, Richard Herz, Shannon Marcoux, and Sydney Speizman, Earthrights International, Washington, D.C., for Amici Curie Former Diplomats, Service Members and Intelligence Officers.

Jules Lobel, Center for Constitutional Rights, Pittsburgh, Pennsylvania; Jennifer B. Condon, Center for Social Justice, Seton Hall University School of Law, Newark, New Jersey; for Amici Curiae Scholars of Constitutional Law, Federal Courts, and International Law.

Carol A. Sobel, Law Office of Carol A. Sobel, Santa Monica, California, for Amicus Curiae Global Rights Compliance, Lina Baddour, and Tom Dannenbaum.

Paul L. Hoffman, Schonbrun Seplow Harris Hoffman & Zeldes LLP, Hermosa Beach, California, for Amici Curiae International Law Scholars.

Meena Jagannath, Movement Law Lab, Miami, Florida; Jeena Shah, City University of New York School of Law, Long Island City, New York; Dan Siegel and Sara Beladi, Siegel Yee Brunner & Mehta, Oakland, California; Adam W. Boyd, Gibbs Houston Pauw, Seattle, Washington; for Amici Curiae International Human Rights Organizations.

## OPINION

PER CURIAM:

Asserting violations of international law, the plaintiffs in this case ask us to enjoin the President and other senior Executive Branch officials from providing military, diplomatic, and financial support to Israel in its ongoing operations in the Gaza Strip. The plaintiffs also ask for a declaration that the United States' current support of Israel is unlawful. We hold that plaintiffs' lawsuit is not justiciable under the political question doctrine. We affirm the dismissal of plaintiffs' complaint.

I

After Hamas militants attacked Israel on October 7, 2023, Israel began a military campaign in Gaza. Since October 7th, the United States has supported Israel through military, diplomatic, and financial means. The plaintiffs in this case are Palestinian nongovernmental organizations, residents of Gaza, and Palestinian-Americans. Suing the President, the Secretary of State, and the Secretary of Defense, plaintiffs claim that Israel is committing a genocide in Gaza against the Palestinian people. Plaintiffs maintain that the United States' support of Israel and its failure to stop

the alleged genocide violate customary international law and the Genocide Convention, which was adopted by the United Nations General Assembly in 1948 and ratified by the United States in 1988. *See* Convention on Prevention and Punishment of Crime of Genocide, Dec. 9, 1948, 78 U.N.T.S. 277.

The complaint asserts two claims. First, plaintiffs allege that the defendants are violating their obligations to prevent genocide under Article I of the Genocide Convention, such as by failing to use the United States' "considerable influence to call for an end to the bombing, cut off weapons deliveries or take measures to end the siege." Second, they allege that the United States' provision of "military assistance, equipment, weapons, and other forms of support to the Israeli government" makes the United States complicit in genocide, in violation of Article III(e) of the Genocide Convention and its implementing legislation, 18 U.S.C. § 1091, which makes genocide a federal crime.

Plaintiffs' complaint demands wide-ranging injunctive and declaratory relief, including the following: (1) "Order Defendants to take all measures within their power to exert influence over Israel to end its bombing of the Palestinian people of Gaza;" and (2) "[E]njoin[] Defendants from aiding, abetting, enabling or facilitating Israel's commission of genocidal acts against the Palestinian people of Gaza," including by (a) "Enjoin[ing] Defendants from providing, facilitating, or coordinating military assistance or financing to Israel; from initiating, acting upon, continuing, expediting, or completing sales, transfers, or delivery of weapons and arms to Israel; and from providing military equipment and personnel, advancing Israel's commission of genocidal acts," and (b) "Enjoin[ing] Defendants from obstructing attempts by the international community,

including at the United Nations, to implement a ceasefire in Gaza and lift the siege on Gaza." Plaintiffs also asked the district court to enter a preliminary injunction preventing defendants "from providing any further military or financial support, aid, or any form of assistance to Israel's attacks . . . ."

The district court dismissed the complaint because plaintiffs' claims raised "fundamentally non-justiciable political questions." We review this determination de novo. *See Saldana v. Occidental Petroleum Corp.*, 774 F.3d 544, 551 (9th Cir. 2014) (per curiam).

## II

Though federal courts decide cases with political overtones, we do not decide political questions. "Questions, in their nature political, or which are, by the constitution and laws, submitted to the executive, can never be made in this court." *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 170 (1803). This "narrow exception" to our presumptive exercise of jurisdiction is known as the "political question" doctrine. *Zivotofsky ex rel. Zivotofsky v. Clinton (Zivotofsky I)*, 566 U.S. 189, 195 (2012). It "excludes from judicial review those controversies which revolve around policy choices and value determinations constitutionally committed for resolution to the halls of Congress or the confines of the Executive Branch." *Japan Whaling Ass'n v. Am. Cetacean Soc'y*, 478 U.S. 221, 230 (1986). The doctrine "is primarily a function of the separation of powers." *Baker v. Carr*, 369 U.S. 186, 210 (1962). It reflects the foundational precept, central to our form of government, that federal courts decide only matters of law, with the elected branches setting the policies of our nation. Because this doctrine embodies a limit on the powers of the judiciary, we lack subject matter

jurisdiction to resolve claims that present political questions. *See Corrie v. Caterpillar, Inc.*, 503 F.3d 974, 980–81 (9th Cir. 2007).

In *Baker v. Carr*, the Supreme Court instructed that to determine whether a claim presents a nonjusticiable political question, we ask whether it "inextricabl[y]" involves:

> [1] a textually demonstrable constitutional commitment of the issue to a coordinate political department; or [2] a lack of judicially discoverable and manageable standards for resolving it; or [3] the impossibility of deciding without an initial policy determination of a kind clearly for nonjudicial decision; or [4] the impossibility of a court's undertaking independent resolution without expressing lack of the respect due coordinate branches of government; or [5] an unusual need for unquestioning adherence to a political decision already made; or [6] the potentiality of embarrassment from multifarious pronouncements by various departments of one question.

*Baker*, 369 U.S. at 217.  These factors require "a discriminating analysis of the particular question posed, in terms of the history of its management by the political branches, of its susceptibility to judicial handling in light of its nature and posture in the specific case, and of the possible consequences of judicial action." *Id.* at 211–12. Although the first two factors "are likely the most important," the "*Baker* factors 'often collaps[e] into one another.'" *Republic*

*of Marshall Islands v. United States*, 865 F.3d 1187, 1200 (9th Cir. 2017) (alteration in original) (quoting *Alperin v. Vatican Bank*, 410 F.3d 532, 544 (9th Cir. 2005)). And "we need only conclude that one factor is present" to find that the political question doctrine applies. *Id.* (quoting *Schneider v. Kissinger*, 412 F.3d 190, 194 (D.C. Cir. 2005)).

Applying this framework, we conclude that plaintiffs' complaint presents nonjusticiable political questions. We fully appreciate that it is "error to suppose that every case or controversy which touches foreign relations lies beyond judicial cognizance." *Baker*, 369 U.S. at 211. But this case goes beyond that. By the textual allocation of powers in our founding document, "the management of foreign affairs predominantly falls within the sphere of the political branches," with "the courts consistently defer[ring] to those branches." *Alperin*, 410 F.3d at 549 (citing, *e.g.*, *Am. Ins. Ass'n v. Garamendi*, 539 U.S. 396, 422 n.12 (2003); *Oetjen v. Cent. Leather Co.*, 246 U.S. 297, 302 (1918)). And with no manageable standards to govern what kind of support to provide an ally in wartime, plaintiffs' lawsuit would place our country's strategic approach to a major world conflict under the auspices of a single federal district court.

"Whether to grant military or other aid to a foreign nation is a political decision inherently entangled with the conduct of foreign relations." *Corrie*, 503 F.3d at 983. Yet by plaintiffs' design, the foreign affairs, military, diplomatic, and spending functions of the United States—as they relate to the active conflagration in Gaza—would be subject to judicial decree. Plaintiffs' lawsuit and extraordinary requests for relief present political questions grounded in matters committed to those branches of our government that exercise military and diplomatic prerogatives. The courts do

not chart the national security and geopolitical objectives of the United States. The law does not place such decisions within our rightful authority.

We find strong support for our conclusion in *Corrie v. Caterpillar, Inc.*, 503 F.3d 974 (9th Cir. 2007). In *Corrie*, the plaintiffs sued Caterpillar, alleging that the Israel Defense Forces (IDF) used Caterpillar bulldozers, paid for by the United States, to destroy homes in the Palestinian Territories. *Id.* at 976–77. Plaintiffs contended that the IDF's actions violated international law and that Caterpillar aided and abetted those violations by providing the bulldozers. *Id.* at 976–77, 979.

We held that because the United States had funded the bulldozer sales to Israel, the plaintiffs' claims presented nonjusticiable political questions. *Id.* at 982. The reason was straightforward: "Allowing this action to proceed would necessarily require the judicial branch of our government to question the political branches' decision to grant extensive military aid to Israel." *Id.* The political question doctrine applied because "[i]t is not the role of the courts to indirectly indict Israel for violating international law with military equipment the United States government provided and continues to provide." *Id.* at 984. The case was not justiciable because we "could not find in favor of the plaintiffs without implicitly questioning, and even condemning, United States foreign policy toward Israel." *Id.*

The logic of *Corrie* applies many times over here. The intrusion on foreign affairs in *Corrie* was "indirect" and "implicit." But there is nothing "indirect" or "implicit" about the lawsuit before us. Plaintiffs have sued the President and other senior Executive Branch officials directly. And they explicitly ask the courts to condemn the

United States' foreign policy toward Israel, to the point of wresting this responsibility away from the Executive Branch and placing it under judicial control. If the political question doctrine was implicated in *Corrie*, surely it is implicated here.

Resisting this conclusion, the plaintiffs maintain that the political question doctrine applies only to "discretionary" Executive decisions, and that here they have alleged non-compliance with legal duties—the duties to prevent and not be complicit in genocide. In plaintiffs' view, their centering this case around the alleged violations of legal duties takes it outside the political question doctrine.

Plaintiffs' theory is mistaken. Many, if not most, grievances can be styled as the violation of an asserted legal obligation. In this case, we question whether the plaintiffs' claimed legal violations can be meaningfully isolated out from the considerable discretion that otherwise characterizes the political branches' powers in the areas of foreign and military affairs. *See Baker*, 369 U.S. at 217; *Corrie*, 503 F.3d at 983 n.8. Regardless, there is no valid support for the idea that merely alleging the violation of a claimed legal duty means that the political question doctrine does not apply. Courts must instead consider the full import of the legal claim and the implications of the judiciary deciding it under our separation of powers. Application of the political question doctrine turns not merely on the formal duty-discretion distinction that plaintiffs posit but, as the Supreme Court has said, on a "discriminating analysis of the particular question posed, in terms of the history of its management by the political branches, of its susceptibility to judicial handling in the light of its nature and posture in the specific case, and of the possible consequences of judicial action." *Baker*, 369 U.S. at 211–12. We agree with the D.C. Circuit

that "[t]he political question doctrine bars our review of claims that, *regardless of how they are styled*, call into question the prudence of the political branches in matters of foreign policy or national security constitutionally committed to their discretion." *El-Shifa Pharm. Indus. Co. v. United States*, 607 F.3d 836, 842 (D.C. Cir. 2010) (en banc) (emphasis added).

Our precedents bear out this observation. We have repeatedly held that the political question doctrine applies in the face of allegations that a defendant had violated legal obligations rooted in international law, where the United States' foreign policy decisions were strongly implicated. In *Corrie*, as we have discussed, we held that the political question doctrine prevented judicial resolution of claims premised on the allegation that Caterpillar aided and abetted the violation of international law, because the Caterpillar bulldozers were paid for by the United States. 503 F.3d at 979, 982. In *Alperin*, we held that we lacked jurisdiction to decide political questions relating to the Vatican Bank's alleged assistance in a Nazi-supported genocide committed by the Croatian Ustasha regime. 410 F.3d at 548. The plaintiffs asserted violations of international law, including prohibitions on genocide. *Id.* at 543–44. But we recognized that "[w]e are not a war crimes tribunal," and that adjudicating the claims about the Vatican's support for certain war objectives "would require us to 'intrude unduly on certain policy choices and value judgments that are constitutionally committed to the political branches.'" *Id.* at 560 (alterations omitted) (quoting *Koohi v. United States*, 976 F.2d 1328, 1331 (9th Cir. 1992)).

Similarly, in *Saldana*, we held that we lacked jurisdiction under the political question doctrine to decide plaintiffs' federal and state law claims based on an oil company's

support of the Colombian National Army's 18th Brigade. 774 F.3d at 552. Because the United States had also supported the Brigade, deciding plaintiffs' claims would "necessarily require[] the judicial branch to question the political branches' decision to provide extensive military aid to Colombia" and its army. *Id.* We thus lacked subject matter jurisdiction under the political question doctrine, even though the plaintiffs alleged human rights violations that provided the basis for their legal claims. *Id.* at 549–50. Although some cases involving alleged genocide will be justiciable, as the United States agrees, our precedents bely plaintiffs' argument that the violation of a claimed legal duty is the be-all and end-all of the political question analysis.

Plaintiffs' heavy reliance on *Zivotofsky I* is therefore misplaced. There, the Supreme Court held that federal courts had jurisdiction over a dispute concerning Congress's attempt to "override" the State Department's policy of listing "Jerusalem," rather than "Israel," as the place of birth on the passport of a U.S. citizen born in Jerusalem. *Zivotofsky I*, 566 U.S. at 191–92. The political question doctrine did not apply because the federal courts were not being asked to "supplant a foreign policy decision of the political branches with the courts' unmoored determination of what United States policy towards Jerusalem should be." *Id.* at 196. Instead, the only issue was whether the law Congress passed—requiring "Israel" to be listed as the place of birth—was an unconstitutional usurpation of Executive power. *Id.* The statutory and constitutional interpretation required to answer this question, the Court held, was "a familiar judicial exercise." *Id.*

What we have here is anything but familiar. The myriad "policy choices and value determinations" that a court would need to pass on in this case, *Japan Whaling Ass'n*, 478 U.S.

at 230, include, by the allegations of the complaint: evaluating the "military decisions and strategy" the United States has followed with respect to Israel, the scope of the United States' influence over Israel, whether the United States should have imposed "conditions on its support to Israel," and how the United States has acted in the United Nations Security Council.

The justiciable statutory and constitutional questions in *Zivotofsky I* bear no relation to what plaintiffs ask for here: a court "[e]njoining Defendants from providing, facilitating, or coordinating military assistance or financing to Israel." In what was ultimately a dispute between the political branches, the plaintiff in *Zivotofsky I* wanted a birthplace on a passport to be changed. The plaintiffs here want the judiciary to evaluate and reject the "military decisions and strategy" that the United States has followed with respect to Israel and Gaza since October 7, 2023. Our precedents, like our decision today, are fully consistent with *Zivotofsky I*. Nothing in that case supports plaintiffs' far-reaching request for the courts to "condemn[] United States foreign policy toward Israel," *Corrie*, 503 F.3d at 984, and to question whether American "economic and military aid" to Israel is "necessary and appropriate." *Saldana*, 774 F.3d at 555.

It does not matter that plaintiffs have also sought a declaratory judgment. Plaintiffs argue this form of relief avoids any political question impediment, but that is incorrect. Plaintiffs would have a federal court "[d]eclare that Defendants have violated their duty under customary international law, as part of federal common law, to take all measures within their power to prevent Israel from committing genocide against the Palestinian people of Gaza," and to declare that the United States has violated international law through its complicity in Israel's alleged

genocidal acts. Resolving this request for relief would present the same political questions we discussed above. We have held that the political question doctrine applies to requests for declaratory relief, *see, e.g.*, *Corrie*, 503 F.3d at 984, and the same result obtains here.

We make one final observation. Although the district court concluded that plaintiffs' claims presented "fundamentally non-justiciable political questions," it also commented on the merits of plaintiffs' case. Among other things, the district court stated that "the current treatment of the Palestinians in the Gaza Strip by the Israeli military may plausibly constitute a genocide in violation of international law." To the extent plaintiffs construe the district court's commentary as factual findings, plaintiffs are incorrect. Because the district court lacked subject matter jurisdiction, any claimed factual findings and related commentary are of no legal force. Once it is determined that claims present political questions, the judicial inquiry ends.

**AFFIRMED.**